MABEL JOHNSON

*v.*

GEORGE JOHNSON.

[Decided April 10th, 1911.]

1. If a rape be committed by a husband his wife may have a divorce from him on the ground of adultery, for in the law of divorce adultery is the voluntary sexual intercourse of a married person with one not the husband or wife of that person; therefore, rape is adultery on the part of the man. although not so on the part of the woman who is carnally known forcibly and against her will.

2. To an indictment against him for rape the accused pleaded *non vult*. The rape laid in the indictment is the adultery charged in the case at bar, and the plea of *non vult* was admitted in this cause to affect the credibility of the defendant as a witness, which it does in a twofold aspect—*first*, it affects his credibility generally upon the principle that a man who would commit a crime would tell an untruth; and *second*, that as the particular crime to which he pleaded involves the identical facts which are the basis of this collateral proceeding, more and greater discredit attaches to the witness, who now says he did not commit the act, when, on his arraignment on indictment as for a crime in committing the same offence he admitted this guilt (for such was the effect of his plea in the criminal court), instead of protesting his innocence as here.

3. The question of the extent of the discredit attaching to a witness is one for the court whose province it is to consider and determine the issue; it is a question of fact, not of law.

4. *Quære.* Can the defendant's plea of *non vult* to the indictment be received substantively on the issue in this case, as an admission of the truth of the charge against him, irrespective of the discredit attaching to him as a witness.

5. If a party accused of adultery prove that the accuser, having probable knowledge of the offence committed, afterwards has voluntary sexual intercourse with the accused, the accuser shall not obtain a divorce for the adultery thus condoned.

6. The rule that pardon may be implied from sexual intercourse is not enforced so rigorously against a wife as it is against a husband, and the reason is that the wife, to a considerable extent, is subject to and dependent on her husband, and his guilt is of less consequence to her than her guilt is to him; and if the wife voluntarily has sexual intercourse with her husband while entertaining a belief of his guilt, which belief is the product of suspicion only and not of evidence, it is not a condonation of the offence.

7. Where the wife seeks a divorce against her husband on the ground of adultery, if she, having knowledge of the adultery, or reason to believe it, continues voluntarily to have sexual intercourse with him, it constitutes a condonation of the offence, and she is not entitled to a divorce.

8. The petitioner in this cause having voluntarily had sexual intercourse with the defendant while he was incarcerated in the Flemington jail, both before and after he, to her knowledge, had pleaded *non vult* to the crime of rape, which sexual act constitutes the adultery charged in this case, and after the mother of the girl who was raped had told the petitioner all about the affair (and the mother had heard all from her daughter), and who, petitioner, was thus in possession of all the evidence of her husband's offence which she afterwards used to establish his guilt in this court, she must be held to have had reasonable knowledge of the adultery committed by the defendant, and to have believed him guilty, and, therefore, to have condoned his offence.

---

On final hearing on pleadings and proofs.

*Mr. Paul A. Queen,* for the petitioner.

*Mr. Ellis L. Pierson,* for the defendant.

WALKER, V. C.

This is an application for a divorce for adultery. The parties were married February 24th, 1904, and the charge is that the defendant committed adultery on May 1st, 1906, with a girl four-

teen or fifteen years of age. The offence was a rape, for which the defendant was apprehended, and on a plea of *non vult,* was sentenced to six years in the New Jersey state prison, where he is confined.

For a rape committed by a husband, a wife may have a divorce. In the law of divorce adultery is the voluntary sexual intercourse of a married person with one not the husband or wife of that person. *1 Bish. Mar., D. & S. § 1502.* Therefore, rape is adultery on the part of the man, although not so on the part of the woman who is carnally known forcibly and against her will. It is so treated in the criminal law, and by every process of right reason should be, and I believe is, so treated in the law of divorce.

The supreme court of Iowa in *State* v. *Sanders, 30 Iowa 582,* said:

"To constitute the crime of adultery as against the man, the consent of the woman to the carnal intercourse is not indispensable, but the offence may, as against him, exist, though the connection was effected by force and against her will."

In *Commonwealth* v. *Bakeman, 131 Mass. 577,* the supreme judicial court of Massachusetts said (at *p. 578*):

"When a crime charged is one which consists in the concurrent act of two or more, such as conspiracy, such joint action must be alleged and proved. But adultery is not such a crime. One person may be alone guilty of it. The act of sexual intercourse, by a married man with an unmarried woman, or by an unmarried man with a married woman, is adultery in the man without regard to the guilt of the woman. It is an act committed by him, between him and the woman, although she is not the criminal or conscious participant. And it is not less adultery that it is also rape. The offences are different in the nature of the wrong done, and in the facts which constitute them. Neither includes the other; and a defendant may be convicted of either without allegation or proof of some fact essential to the other. Carnal knowledge of a woman is the fact common to both; if it is with force and against her will the crime is rape, and the fact that she is married is immaterial; if she is a married woman the crime is adultery, and the fact that it is by force is immaterial. That a man cannot commit rape upon a married woman without also

committing adultery, only shows that he commits both crimes by one act which includes all the elements of both."

The guilt of the defendant in the case at bar clearly made out. The proof came from the young girl who was raped; the physician who examined her after the act and other corroborating circumstances.

For the crime mentioned, the offender was indicted and pleaded *non vult*. That fact was elicited from the defendant on his cross-examination; and the question is, what is the effect of that plea in this case?

Now, the plea of *non vult* interposed by Johnson to the crime of rape is a confession amounting to a conviction. In *State* v. *Henson, 66 N. J. Law (37 Vr.) 601,* Mr. Justice Van Syckel, speaking for the court of errors and appeals, adopts the distinction between the terms "conviction" and "judgment," made by Mr. Justice Gray of the Massachusetts supreme court, as follows:

"The ordinary legal meaning of conviction, when used to designate a particular stage of a prosecution triable by a jury, is the confession of the accused, in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while judgment or sentence is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained."

And, again, in *State* v. *Henson,* speaking of the effect of a plea of *non vult*, Mr. Justice Van Syckel says (at *p. 609*) :

"In our supreme court, in a case decided in 1884, and not since called in question, it is held that a plea of *nolo contendere* is equivalent to a plea of guilty, the only difference in the significance of the two pleas being in the force each has upon a collateral proceeding. *Peacock* v. *Hudson Sessions, 46 N. J. Law (17 Vr.) 112.*"

The defendant's plea of *non vult* to the indictment for rape was certainly admissible in this case to discredit his testimony when he took the stand in his own behalf; but, was it also admissible as being a declaration contradictory to his statement that he was not guilty given in evidence, on oath, in this cause?

In *Hill* v. *Maxwell, 77 N. J. Law (48 Vr.) 766,* the court of errors and appeals held such a plea (*non vult*) to an indictment to be evidence in a civil suit to affect the defendant's credibility as a witness, but left undecided the question whether the plea extended to contradict anything previously testified to by the witness.

Mr. Justice Van Syckel, in his opinion in the *Henson Case, ubi supra, 66 N. J. Law (37 Vr.) (at p. 609),* said:

"The books agree that the only advantage the defendant obtained by this plea (*nolo contendere*) is that he is not estopped to set up his innocence in an action based upon the same state of facts."

The effect of the plea under discussion is well stated in *12 Cyc.* (at *p. 354*), as follows:

> "A plea of *nolo contendere,* which is still allowed in some jurisdictions, is an implied confession of the crime charged, and as regards the case in which it is entered, is equivalent to a plea of guilty, except that it gives to the accused the advantage of not being estopped to deny his guilt in a civil action based upon the same facts as he would be upon a plea of guilty."

The difference between the plea of guilty or *non vult* to an indictment was, and is, that the former estopped the defendant from entering a plea of not guilty in a civil suit based upon the same facts, but the latter plea would not estop the defendant from having his plea of not guilty; in other words, of trying the issue out with his adversary in the civil suit. Formerly, the plea of *non vult* was not admissible in evidence in the civil suit because it could have no effect.

The defendant could not be a witness in his own behalf, and not being a witness, he was not subject to impeachment. Now, however, the defendant may be a witness, and, taking the stand and being sworn and testifying in his own behalf, he subjects himself to all the rules of evidence in regard to witnesses, and his character may be impeached and his credibility may be affected by any evidence that tends to discredit him. *Disque* v. *State, 49 N. J. Law (20 Vr.) 249; Crosby* v. *Wells, 73 N. J. Law (44 Vr.) 804.*

Thus we see that the law which formerly prevented the admission of a plea of *non vult* in evidence has been changed so that the plea is now admissible under certain circumstances, namely, to impeach a witness. The maxim *"cessante ratione, cessat ipsa lex"* would seem to apply; and, as an illustration, there are apposite remarks of the supreme court to be found in *Powers* v. *Totten,* 42 *N. J. Law* (*13 Vr.*) 442 (at *p. 445*), to the effect that the reason of the law ceasing, the law itself ceases. Still, it is unnecessary to decide in this case whether the plea of *non vult* may be used substantively on the issue as a declaration of the defendant contrary to his sworn statement herein, or, in other words, as a confession of guilt, for there is abundant evidence in the cause to establish his guilt, without such resort to the plea.

In this case I will confine the effect of the defendant's plea of *non vult* to the affecting of his credibility as a witness, but, I desire to say, that in that respect it has a twofold aspect—*first,* is affects his credibility generally upon the principle that a man who would commit a crime would tell an untruth, and *second,* that as the particular crime to which this defendant has pleaded involves the identical state of facts which are the basis of this collateral proceeding, more and greater discredit attaches to the defendant, who, in this cause, says he did not commit the act, when, as we have seen, on his arraignment on indictment as for a crime in committing the same offence he admitted his guilt (for such was the effect of his plea in the criminal court), instead of protesting his innocence as here. The question whether his plea of *non vult* can be received as an admission of the truth of the charge against him, irrespective of the discredit attaching to him as a witness, is, therefore, left undecided, as was done by the court of errors and appeals in *Hill* v. *Maxwell, ubi supra.*

There can be no doubt that the question of the extent of the discredit attaching to a witness is one for the jury, or for the court when that tribunal is to pass upon the issue, as in this case. It is a question of fact, not of law.

Said Mr. Justice Van Syckel, for the court of errors and appeals in *State* v. *Henson,* 66 *N. J. Law* (*37 Vr.*) 601 (at *p. 606*):

"The act of 1874 does not submit to the court, as a question of law, whether the crimes charged should affect credibility; it is a question for the jury, whose province alone it is to say to what

extent, if any, credibility shall be affected. Proof of previous conviction of crime is not, and cannot be, offered or considered to establish the guilt of a prisoner on his trial; its only purpose and object is to affect the credit to be given to his own testimony voluntarily offered by him on his own behalf."

It should be noted that in the *Henson Case* the plea admitted to affect credibility was of and concerning a crime other than the offence for which the defendant was then on trial, and therein that case differs from this case. *State* v. *Henson,* in my opinion, does not militate against the theory that if a plea of *non vult* to a crime be received in evidence to affect the credibility of a witness, who is a party, in a case in which the facts constituting the crime also constitute the gravamen of the cause in which the plea is admitted in evidence, that that plea may also be given effect as a declaration by the party contrary to the one then made by him as a witness. This question, however, as already remarked, I do not decide.

·The defence relied upon in the case *sub judice* is condonation, and it is made out by proof of the fact that after the defendant was arrested and lodged in the Flemington jail his wife visited him and had sexual relations with him there, even after he had, to her knowledge, pleaded *non vult* to the indictment and had received his sentence.

In *Delliber* v. *Delliber, 9 Conn. 233,* it was held:

"A conviction of the husband of adultery is sufficient notice to the wife of his having committed that offence.

"Therefore, where the husband had been convicted of adultery, and his wife afterwards lodged with him in prison, two or three nights, she knowing, at the time, of his having been thus convicted; and during those nights, she had sexual intercourse with him, it was held—first, that she had probable knowledge of the offence, and second, that these facts were a defence to a petition for divorce brought by her."

With us, as in Connecticut, condonation will be held to have taken place if the injured party has sexual intercourse with the guilty one after probable knowledge of the latter's offence.

Said Chancellor Green in *Marsh* v. *Marsh, 13 N. J. Eq. (2 Beas.) 281, 282:*

"Condonation may be implied if the husband, after reasonable knowledge of the infidelity of his wife, continues to admit her as the partner of his bed. * * *

"Reasonable knowledge may be said to have been had when information of a fact is given by credible persons, speaking of their own knowledge, particularly if the same facts be afterwards proved. * * *

"If the party accused of adultery shall prove that the accuser, before the commencement of the suit, had probable knowledge of the crime committed, and yet afterwards cohabited with the accused, in such case the accuser shall not obtain a sentence of divorce for the crime that shall be supposed to have been remitted."

The rule that pardon may be implied from sexual intercourse is not enforced so rigorously against a wife as it is against a husband, and the reason is, that the wife, to a considerable extent, is subject to and dependent on her husband, and his guilt is of less consequence to her than her guilt is to him (*Shackleton* v. *Shackleton, 48 N. J. Eq. (3 Dick.) 364*), and while the fact that a wife voluntarily has sexual intercourse with her husband while entertaining a belief of his guilt, as the product of suspicion and not of evidence, is not a condonation of the offence (*Ibid.*), nevertheless, where the wife seeks a divorce against her husband on the ground of adultery, if the wife, having knowledge of the adultery, or reason to believe it, continues voluntarily to live with her husband, except for imperative reasons, it constitutes a condonation of the offence, and she is not entitled to a divorce. *Stevens* v. *Stevens, 14 N. J. Eq. (1 McCart.) 374.* Equally so, I take it, if the wife continues voluntarily to have sexual intercourse with him, after knowledge of the adultery, or reason to believe it, whether she lives with him or not.

Certainly there were no imperative reasons compelling this wife to have sexual relations with her husband in the Flemington jail. If there be any place in which a wife may successfully resist the control of her husband, and be free from restraint, it would seem to be in a jail where he is a prisoner, and she a visitor, and if, in such an institution under such circumstances, an attempt was made to force her to submit to the sexual act

against her will, her outcries would undoubtedly have brought assistance, and saved her from the undesired embraces of her husband. It would appear from her testimony that there were always jailors about, for she said that they allowed her to stay in the jail as long as she wanted to unless they were going away, and then she would have to go out. Undoubtedly, there was always someone within hailing distance. Furthermore, she does not assert that she was ever forced by her husband in the jail, and it abundantly appears that her sexual commerce with him there was entirely voluntary on her part.

As to the facts: On the night of the day that the defendant committed the rape, he came home very late and told his wife that somebody had committed a rape, and that it was laid on him and a constable was after him. He said he was not guilty, but he ran away to avoid arrest, and remained away about a week, when he returned and was apprehended. This was early in May, and he was taken immediately to Flemington jail where he remained until the next September when he was indicted, pleaded *non vult,* and was sentenced to the state prison. About a week after the defendant was accused of committing the rape, the petitioner had a conversation with the mother of the girl who had been outraged, and the girl's mother told the petitioner all she knew about the affair, and she had heard all from her daughter. This was just after the defendant was arrested and while he was in jail. During the summer of his incarceration in Flemington the petitioner visited the defendant in jail, remaining with him alone for hours at a time in a reception room in which there were two cots, and sometimes in his cell. She says they had sexual intercourse in the jail several times before the defendant pleaded. She says that she did not believe him to be guilty until some time after he had gone to the state prison. However, she did not come into the possession of any new facts after the defendant was sentenced.

In her direct examination these questions and answers are to be found:

"Q. Did your belief in his innocence continue up to the time and after he was arrested?

"A. Yes, sir; until he left the jail up there at Flemington.

"Q. After he left the jail up there and came down to state prison, did you believe he was guilty?

"A. Well, I thought he must be guilty or he would not have went down there; he would not have pleaded to what he did and went down there."

And in her cross-examination:

"Q. Do you remember the day that your husband pleaded *non vult* to the crime of rape?

"A. Yes, sir.

"Q. And he was sentenced that day, wasn't he?

"A. Yes, sir.

"Q. You spent a long time in the jail with him after he was sentenced, didn't you?

"A. Yes, sir.

"Q. And that was, you thought, your last visit to him before he came to prison, didn't you?

"A. Yes, sir.

"Q. And on that occasion you had sexual intercourse with him, didn't you?

"A. No, sir, not that I remember.

"Q. If, however, he says that you did, you will not deny it, will you?

"A. No, sir; but I don't remember that time."

After so testifying, and doubtless seeing the force of what she said, she then denied point blank having had sexual intercourse with her husband in the jail after he pleaded *non vult* and received his sentence.

However, in view of her admissions that their sexual intercourse was quite frequent in the jail during his incarceration, and of his testimony that they enjoyed coition on the occasion of her last visit, which was after his plea and sentence, and of the further fact that they were alone together in the jail on that occasion for a long time and had abundant opportunity to gratify their sexual appetites, I have no hesitation whatever in arriving at the conclusion that they performed the conjugal act, with her consent, even after he, to her knowledge, had pleaded *non vult* to the crime of rape, and when she belived him guilty of the offence.

The defendant's guilt of adultery has been clearly established by legal evidence; but, the defence of condonation being made out, petitioner's prayer for divorce must be denied.

# CASES

ADJUDGED IN

# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

### FEBRUARY TERM, 1911.