This is a case for divorce. Petitioner brought suit against her husband on the ground of desertion. Defendant filed an answer denying the allegation, and a counter-claim against his wife on the ground of adultery.
At the hearing the solicitor for the petitioner announced that he was unable to produce his client, that she had disappeared, *Page 529 
and that he considered she had abandoned her cause.
The petitioner's petition was thereupon dismissed and the matter came on to trial on the counter-claim filed by the defendant, alleging the adultery of Elizabeth Wright. Mrs. Wright's solicitor remained in court to contest the counter-claim.
It is significant that the wife, although she filed an answer to the counter-claim in the cause and knew of the serious charge against her, did not appear at the trial.
There was introduced in evidence a record of the second criminal court in the city of Newark. The complaint reads as follows:
"Elizabeth Wright did allow and permit her apartment in the house, No. 355 Walnut street, to be used, frequented and resorted to by riotous and disorderly persons, gamblers, vagrants and common mendicants between the hours of five o'clock in the evening and seven o'clock in the morning in violation of section 632 of the revised ordinances of the city of Newark (Revision of 1913), approved October 4th, 1913, and amendments and supplements thereto."
To this complaint Elizabeth Wright entered a plea of not guilty, the record shows, which she afterwards retracted and entered a plea of non vult. She waived her right to trial in the upper court and was thereupon fined $50. Counsel argues that this plea is evidence of the commission of adultery, the complaint being, in effect, a charge of keeping a disorderly house; but a common law indictment for keeping a disorderly house does not charge the keeper with a sexual offense, as will hereafter be shown.
It will be seen that there is no allegation whatever of adultery in this complaint, and, therefore, it is not evidential of that offense in this case. Assuming that it were an equivalent of a disorderly house indictment in the usual common law form, which would be that said defendant "unlawfully did keep and maintain a certain common, ill-governed and disorderly house, at which certain persons of evil name and fame and dishonest conversation did cause and procure to frequent and come together, then and there to be and remain drinking, *Page 530 
tippling, fighting, cursing, swearing, whoring and otherwise misbehaving themselves," c., a plea of non vult entered in such a case would not be evidential, although "whoring" would be charged among the other acts of disorder described.
The indictment in such form would only charge the defendant with keeping the house wherein sexual immorality, among other acts of disorder, may have occurred. On such an indictment, if proof had been made, it might have been shown that the disorder consisted of gambling only, or one or more of the other matters charged, without any sexual immorality at all; or it might have appeared that all the acts of disorder alleged were committed in the house, including prostitution. However, under such an indictment and on such a plea, there would be nothing before the court to show that the house was one of prostitution, and, even if it had been proven on a trial that the house was of such a character, still that would not necessarily have indicated that the defendant, the keeper of the house, was one of the sexual offenders.
In Johnson v. Johnson, 78 N.J. Eq. 507, Chancellor Walker, then vice-chancellor, made a quaere, Can the defendant's plea of non vult to an indictment for adultery be received as substantive evidence on the issue of adultery in a divorce case, as an admission of the truth of the charge against him, irrespective of the discredit attaching to him as a witness? In that case the chancellor (at p. 512) confined the effect of the defendant's plea of non vult to the affecting of his credibility as a witness.
In the later case of Stewart v. Stewart, 93 N.J. Eq. 1,
Chancellor Walker held that "a plea of guilty to a charge of adultery in a criminal court is, in a suit for divorce based upon the same adultery, substantive evidence against the party pleading it, and is sufficient to prove the charge and support a decree of divorce."
He cites State v. Henson, 66 N.J. Law 601, in which Mr. Justice Van Syckel, speaking for the court of errors and appeals, in treating of the effect of a plea of non vult, observed (atp. 609) that the only difference between that plea and the one of guilty was in the force each had upon collateral *Page 531 
proceedings. Judge Van Syckel cites Peacock v. HudsonSessions, 46 N.J. Law 112. In that case Mr. Justice Reed, speaking for the supreme court (at p. 113), observed that the implied confession in a plea of non vult is only for the purpose of the prosecution in the course of which it is entered, while the plea of guilty, in that form, may be used against the defendant in a civil suit, thus indicating that the plea of nonvult is not available in a collateral proceeding. This appears to be the decision of the supreme court, the court of chancery and the court of errors and appeals. This position was also taken in the unreported case of Nixon v. Nixon memorandum, filed July 15th, 1921, docket 49/119. The plea of guilty to the offense charged against Mrs. Wright in the criminal court is not evidence of the commission of adultery by her.
However, there is further testimony in the case which leads me to the conclusion that adultery by Elizabeth Wright is sufficiently proven to warrant my advising a decree on the counter-claim for divorce by the husband on that ground.
A witness, one George W. Chenoweth, testified that he had seen the defendant with an Italian, one Meschino, on numerous occasions on the street, in theatres and in her house. On one occasion he was told that improprieties were being committed in the house. He went to the door and demanded admittance. The door was opened by Mrs. Wright, who was partially disrobed, and the Italian, likewise partially disrobed, was in the room with her.
Another witness, Mrs. Mary Hanlon, testified that her house was very near that of the defendant's, and that she could look from her windows into Mrs. Wright's rooms. On one night she looked across into Mrs. Wright's apartment and saw her spring from the bed absolutely unclothed, and an Italian was in the room with her.
Without analyzing this testimony any further, I shall advise a decree dismissing the petition of the petitioner and granting the counter-claim of the defendant for divorce on the ground of adultery. *Page 532