## TWIN PORTS OIL CO. v. PURE OIL CO. et al.

### No. 4000.

District Court, D. Minnesota,
Fourth Division.

Jan. 25, 1939.

Davis, Michel, Yaeger & McGinley, of Minneapolis, Minn., for plaintiff.

David T. Searls, of Houston, Tex., and Kelly Bell, of Chicago, Ill., Vinson, Elkins, Weems & Francis, of Houston, Tex., and R. G. Emmett, of Minneapolis, Minn., for defendant Pure Oil Co.

Weymouth Kirkland, of Chicago, Ill., and Stinchfield, Mackall, Crounse, McNally & Moore, of Minneapolis, Minn., for defendant Standard Oil Co. of Indiana.

Fowler, Youngquist, Furber, Taney & Johnson, of Minneapolis, Minn., and H. H. Thomas of Madison, Wis., for defendant Sinclair Refining Co.

Samuel A. Mitchell, Claude P. Berry, and Richard D. Shewmaker, all of St. Louis, Mo., and Kay Todd, of St. Paul, Minn., for Shell Petroleum Corporation.

Rayburn L. Foster, of Bartlesville, Okl., Walter L. Barnes, of Des Moines, Iowa, and Jay W. Smith, of Minneapolis, Minn., for defendant Phillips Petroleum Co.

Louis Mead Treadwell, of New York City, and Oppenheimer, Dickson, Hodgson, Brown & Donnelly, of St. Paul, Minn., for defendant Socony-Vacuum Oil Company, Inc.

W. P. Z. German and Alvin F. Molony, both of Tulsa, Okl., Cliff V. Peery, of Kansas City, Mo., and Bowen, Best, Flanagan & Rogers, of Minneapolis, Minn., for defendant Skelly Oil Co.

Jas. J. Cosgrove, W. H. Zwick, and A. L. Hull, all of Ponca City, Okl., and Claude G. Krause, of Minneapolis, Minn., for defendant Continental Oil Co.

A. M. Ebright and F. H. Bacon, both of Bartlesville, Okl., Warren T. Spies, of Chicago, Ill., and Asa G. Briggs, of St. Paul, Minn., for defendant Cities Service Oil Co.

NORDBYE, District Judge.

Plaintiff, a jobber in gasoline and allied products, alleges a conspiracy among and by the above-named defendant oil companies to raise prices and to make uniform certain so-called jobbers' contracts, so as to prevent plaintiff in the event its dealings were not satisfactory with one of the major oil companies, from entering into a contract with any other one of the so-called majors. In proving the conspiracy alleged, plaintiff seeks to rely on the method of proof provided by the Clayton Amendment to the Sherman Anti-Trust Act.

The complaint alleges the rendering of two judgments of conviction in criminal cases entered against the moving defendants in the so-called Madison, Wisconsin, cases, which were prosecuted by the United States Government. Plaintiff pleads these judgments by reference, together with the indictments upon which the judgments were based, and gives notice that the judgments and indictments will be relied upon as evidence at the trial of this case.

There were two so-called Madison cases. Madison case No. 1 was based upon an indictment returned in the District Court of the United States for the Western Division of Wisconsin, which was entitled United States of America v. Standard Oil Company, Indiana, et al., 23 F.Supp. 937. In this case, judgment was rendered against all of the defendants.

except Standard Oil Company (Indiana). The latter defendant was granted a new trial. The remaining defendants were found guilty, and were fined by the court in various amounts. Thereafter, the defendants against whom judgments were entered, duly filed their notices of appeal and their supersedeas bonds. This case is now pending on appeal in the Circuit Court of Appeals, Seventh Circuit.

Madison case No. 2 is based on an indictment returned in the same district entitled United States of America v. Socony-Vacuum Oil Company, Inc., et al., 23 F. Supp. 531. Before any evidence was introduced, all the defendants who are defendants in this case withdrew their pleas of not guilty, which had been entered in the case, and with the consent of the court and upon recommendation of the Government, entered pleas of nolo contendere. Fines and court costs were thereupon imposed against each of the defendants, all of which have been paid.

The motions seek to strike all of the allegations in the amended complaint relating to the Madison cases and the indictments in said cases, copies of which have been attached to the amended complaint, on the grounds that (1) the judgment rendered in Madison case No. 1 is not a final judgment by reason of the pendency of the appeal, and therefore none of the proceedings would be admissible in evidence at the trial of this case; and (2) that the proceedings in Madison case No. 2 are not admissible in evidence because a judgment based on a plea of nolo contendere entered under the circumstances therein is a consent judgment within the meaning of the first provision of the Clayton Act, and further, that the judgment is not admissible in evidence because it created no estoppel between the parties thereto and therefore it does not adjudicate, nor is it admission of, any fact questions herein.

Section 5 of the Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 16, reads as follows:

"That a final judgment or decree hereafter rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken: Provided further, This section shall not apply to consent judgments or decrees rendered in criminal proceedings or suits in equity, now pending, in which the taking of testimony has been commenced but has not been concluded, provided such judgments or decrees are rendered before any further testimony is taken.

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

It may be noted that the second proviso of the act above quoted is omitted in 15 U.S.C.A. § 16, because, by the terms thereof, it was temporary legislation.

### Madison Case No. 1

Is the judgment rendered in this case a final judgment as that term is used in the Clayton Act? If it is, defendants' motions should be denied; if it is not, obviously the judgment, as well as the indictment, is immaterial, irrelevant and prejudicial, and should be stricken out.

In determining the meaning of the term "final judgment" as used in the act, we must look to the act itself and ascertain the intent of Congress with reference thereto. A consideration of the abstract term, divorced from the act, will simply lead to uncertainty and confusion, and the definition given to the term in any particular case or decision will not be of any assistance unless the particular facts and circumstances of the case have been carefully considered. In determining whether a judgment in a criminal case is final for the purpose of appeal, it is generally understood that "final judgment" means the sentence. "In criminal cases, as well as civil, the judgment is final for the purpose of appeal 'when it terminates the litigation * * * on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.'" Berman v. United States, 302 U.S. 211, 213, 58 S.Ct. 164, 166, 82 L.Ed. 204.

Therefore, if one were considering the term "final judgment" for the purpose of appeal, concededly the judgment entered in Madison case No. 1 is final. Furthermore, if the judgment was not appealable, it is evident that the sentence rendered in said case would be a final judgment, but it seems reasonably clear that Congress in using the term "final judgment" in the Clayton Act had in mind the final disposition of the case, i. e., a final judgment by reason of failure to appeal within the statutory period, or a final judgment by reason of an affirmance of the appeal by the court of last resort.

■ It is generally recognized that, in the passage of the Clayton Act, 38 Stat. 730, Congress intended to give to a private person, who had been injured by a violation of the Sherman Anti-Trust Act, 15 U.S.C. A. §§ 1–7, 15 note, the benefit of the final disposition of any criminal or equitable proceeding growing out of the conspiracy, instituted by the Government against the same defendants. A defendant who stood trial and was found guilty, and against whom a final judgment was entered, became therefore subject to the use of said judgment as prima facie evidence in third party suits. Long and burdensome litigation was thereby saved to the injured third party, and the prima facie evidence of a final judgment would inure to his benefit. But Congress took pains to state that it was a final judgment that should be prima facie evidence, not merely the judgment entered. If the appeal now pending in Madison case No. 1 is successful, the judgment upon which plaintiff relies may be vacated and set aside. If the present judgment were received in evidence at the trial herein, and a reversal of the judgment is thereafter handed down, the entire proceeding in this Court would be for naught. A futile ceremony may thereby be carried on in the trial proceedings herein, and a verdict based on alleged evidence which later is found to be no evidence at all. Civil proceedings based upon such a judgment might proceed to execution and sale, and irrevocable damage result before a court of last resort vacates the judgment. Surely, Congress did not intend such an absurd result.

■ Plaintiff urges that the Supreme Court in Berman v. United States, supra, has already determined what constitutes a final judgment, and it relies on the language used by the court in that case wherein it is stated that, unless and until a judgment in a criminal case is vacated or reversed, the defendant is "subject to all the disabilities flowing from such a judgment." However, it must be remembered that the court was discussing a penitentiary sentence which was thereafter suspended and the defendant placed on probation. The question for determination was whether or not the judgment rendered under such circumstances was appealable. The sentence in that case was clearly final for the purpose of appeal. The language and definition used by the court therein is not pertinent or applicable to the question presented here.

Courts which have been called upon to determine what construction should be given to the term "final judgment" under circumstances comparable herein, are in accord with the views indicated. In Allen v. Reed et al., 60 App.D.C. 346, 54 F.2d 713, the court was considering a section of the code (D.C.Code1929, T. 24, § 178), which provided in substance that any final judgment rendered in an action of ejectment should be conclusive as to the title therein established as between the parties to the action and all persons claiming under them since the commencement of the action. The court held, however, that a judgment rendered in an action of ejectment pending appeal was not a "final judgment" and therefore not conclusive on the question of title, stating (page 714): "There is nothing especially sacred about a judgment in ejectment, nor anything exceptional that does not apply to judgments in general. Section 1002 of the Code (D.C.Code 1929, T. 24, § 178) provides as follows: 'Any final judgment rendered in an action of ejectment shall be conclusive as to the title thereby established as between the parties to the action and all persons claiming under them since the commencement of the action.' It will be observed that this relates to final judgments. A judgment appealed from is not a final judgment. It is merely an adjudication of the inferior court, the finality of which depends upon the action of the superior court. Until the decree upon which the judgment in the first ejectment suit was based was disposed of on appeal, it was not a final judgment, and was not therefore conclusive upon the parties on the question of title. Title remained suspended pending the appeal."

In Carroll Electric Co., Inc., v. Snelling, 1 Cir., 62 F.2d 413, the court cited the case of Allen v. Reed, supra, with approval and quoted from that decision a portion of the excerpt hereinbefore recited.

In Roberts v. Central Mutual Insurance Co., 1936, 285 Ill.App. 408, 2 N.E.2d 132, it appeared that one Roberts had recovered a judgment against a cab company for $2,500, and a suit was brought against the insurance company upon its bond to recover the amount of the judgment. In its answer to this suit, the insurance company set forth that the judgment against the cab company was pending on appeal. The lower court sustained a motion to strike out these allegations from defendant's answer on the grounds that they did not state a defense. The Appellate Court, however, reversed the lower court, stating (page 134):

"The condition required by the statute and the bond is that the defendant shall pay all final judgments. Was the judgment for which recovery is sought in this case final when this suit was instituted? If it was not final, then defendant had not defaulted on its bond. Its obligation was to pay final judgments. * * *

"Plaintiff contends that the Legislature used the words 'final judgment' in the sense that it was a judgment from which an appeal would lie. We cannot agree with that contention. To give it such a construction would make it possible for plaintiff to maintain an action for the recovery of the amount of a judgment which might later be set aside on appeal. The absurdity of such a construction is apparent. If the court of review should reverse the judgment on the grounds no liability was shown, then the action on the bond would likewise fail, and yet, as in this case, the defendant would be put to the necessity of preventing the judgment on the bond becoming final during the pendency of the appeal in the other case."

See, also, Cochran v. Schell, 107 U.S. 625, 628, 2 S.Ct. 827, 830, 27 L.Ed. 543, where the Supreme Court in discussing the term "final judgment" as referred to in Section 989 of the Revised Statutes, 28 U.S.C.A. § 842, stated that "'the final judgment' * * * is the judgment as it stands after its affirmance by this court, and after the court below has rendered such judgment as the mandate of this court requires."

That Congress intended to use the term "final judgment" in the act as the pronouncement of a court of last resort—and, of course, if no appeal is taken, the judgment of the trial court—is further evidenced by the last paragraph of Section 5 of the Clayton Act above quoted. This paragraph suspends the statute of limitations during the pendency of the equity or criminal proceedings instituted by the Government. Madison case No. 1 is still pending, and the statute of limitations against plaintiff's claim is suspended. It is fair to assume that this paragraph was enacted because it was recognized that the final judgment referred to would be the final disposition of the case.

Weight and effect in the trial of this case should not be given to a judgment, the legality of which is now being considered by the Appellate Court. Plaintiff recognizes that, if this judgment were admitted in evidence and a verdict returned in its favor, it would be the duty of the Court to set the verdict aside if the Circuit Court of Appeals set aside or vacated the judgment. This admission recognizes the weakness and fallacy of plaintiff's position. If the judgment was final within the purview of the act, this Court would be required to receive it in evidence as prima facie proof of the conspiracy, and, regardless of the outcome of the appeal, the reception of this evidence could not be assigned as error. The fact that the validity of the Court's ruling on this evidence is dependent upon the outcome of the pending appeal, impels the view that "final judgment" means the final determination by a court whose decision cannot be reversed or modified. Furthermore, it may be observed that it is far more reasonable and consistent with sound construction to resolve any doubts in favor of the interpretation that the judgment is not final by reason of the pendency of the appeal. Plaintiff's rights, while delayed, will not be materially prejudiced by such a construction. Proceeding to trial at this time in giving effect to the judgment would be gambling with the Court's and the jury's time, and indulging in what might be a futile proceeding.

## Madison Case No. 2.

It appears that a plea of nolo contendere was entered by the defendants before any testimony was taken, and if the judgment entered thereon is a consent judgment within the purview of the first pro-

viso of the act, it follows that all reference to Madison case No. 2 in the amended complaint should be stricken. Congress apparently intended to encourage consent judgments and decrees. It sought to induce a prompt surrender to the Government's demands by excluding consent judgments and decrees from the prima facie rule. That the exception would apply to consent decrees in equity cases entered before any testimony had been taken is free from doubt. The query is, however, does this exception also apply to judgments entered on pleas of guilty and pleas of nolo contendere in criminal cases?

If Congress had stated in enacting the first proviso, "Provided this section shall not apply to judgments or decrees entered before any testimony has been taken," there probably would be no particular difficulty in determining the intention of the framers of this law. It would be recognized that the proviso referred to both criminal and equity proceedings. It is the use of the word "consent" with reference to criminal proceedings that has apparently caused some uncertainty and doubt as to the interpretation to be given to this section. It is urged that a consent judgment in a criminal case is an anomaly in legal parlance. Strictly speaking, it may be that there is no such thing as a consent judgment in criminal proceedings. One who enters a plea of guilty does not necessarily consent to the judgment that the court imposes. But the mere fact that the term "consent judgment" is not generally used in criminal proceedings, or that it is not an accurate characterization of the effect of a plea of guilty, is not conclusive against the construction urged by the defendants herein. If Congress intended to designate judgments entered on pleas of guilty or nolo contendere, before any testimony had been taken, as consent judgments, this Court must give effect to such intention, however unusual or inappropriate the expression may be. However, "consent" does not necessarily refer to or indicate a bilateral agreement; it may be unilateral. In Funk and Wagnalls' New Standard Dictionary, "consent" is defined as "a voluntary yielding of the will, judgment or inclination to what is proposed or desired by another."

It is significant to note that, in the first part of the act, a "final judgment or decree rendered in any criminal prosecution or in any suit in equity" is referred to. Judgments in criminal proceedings and decrees in equity are not treated separately, but are referred to together. It follows from a reading of this part of the act that, when Congress used the term "final judgment or decree", it was referring to both criminal and equity proceedings. The same language was made applicable to both types and classes of cases. In that the term "judgment or decree" in the first part of the act unmistakably refers to both criminal and equity proceedings, it is reasonable to presume that, when Congress used the term "judgments or decrees" in the first proviso, it intended to use such words in the same manner and to the same effect as the words that had theretofore been employed. A construction that the term "judgments or decrees" as used in the first proviso merely refers to civil proceedings would be unwarranted in view of the use of such terms throughout the entire context of the act. In absence of any limitation on the words in the first proviso, it would seem that there should be no real difficulty in determining that Congress intended to refer to both criminal and equity proceedings in excepting consent judgments or decrees.

In Lewellyn v. Harbison, 3 Cir., 31 F.2d 740, the court stated (page 742): "When the same word or phrase is used in the same section of an act more than once, and the meaning is clear as used in one place, it will be construed to have the same meaning in the next place."

As further bearing upon the intention of Congress, reference may be made to the second proviso of Section 5 of the act, which reads: "Provided further, This section shall not apply to consent judgments or decrees rendered in criminal proceedings or suits in equity, now pending, in which the taking of testimony has been commenced but has not been concluded, provided such judgments or decrees are rendered before any further testimony is taken."

It will be noted that this proviso specifically refers to consent judgments in criminal cases. It was apparently promulgated in order to enable defendants in certain cases then pending before the courts to agree to consent decrees in equity cases, or to enter promptly pleas of guilty or nolo contendere in criminal cases, so that the prima facie feature of the judgments and decrees might not be available to third parties. There can be no serious con-

troversy over the construction of this proviso. However anomalous the term "consent judgment" in a criminal proceeding may be, it must be conceded that Congress unmistakably intended to include judgments entered on pleas of guilty and pleas of nolo contendere in pending criminal cases as consent judgments if entered forthwith after the adoption of the act. If it intended to exclude consent judgments in pending criminal cases, no cogent reason is advanced why consent judgments rendered in criminal cases thereafter filed should not be in the same category. Reason and common sense suggest that, if Congress intended to avoid long civil proceedings by encouraging consent decrees, the same consideration would apply to criminal proceedings. Congress was not obliged to make the way easier for private litigants. The prima facie feature of judgments and decrees entered in proceedings instituted by the Government was an innovation of the Clayton Act, and in considering the past experience with reference to the advantage of consent decrees and pleas of guilty, it was apparently assumed that the provisos would redound to the public good.

■ Defendants take the position that, if there is any doubt as to a judgment based on a plea of guilty, it must be recognized that a judgment entered on a plea of nolo contendere more appropriately comes within the purview of a consent judgment than a judgment entered on a plea of guilty, and that the proceedings in Madison case No. 2 establish the fact that after a considerable period of negotiations with the Government, and upon its recommendation and with the consent of the court, the pleas of nolo contendere were entered. It is true that a plea of nolo contendere can only be filed with the court's consent, and often is in the nature of a compromise between the Government and the defendants. The acceptance or rejection thereof rests wholly within the discretion of the trial judge. That there was a complete submission to the Government's demands in Madison case No. 2, and that the parties, as well as the court, assumed that a consent judgment was being entered, is reflected from the following proceedings in the case:

"The Court: In the case of United States of America v. Socony-Vacuum Oil Company, Inc., D.C., 23 F.Supp. 531, I understand that there has been a change of pleadings in this case. In the list that I have here, the following companies and individuals withdraw their pleas of not guilty and enter pleas of nolo contendere: * * * (naming parties).

"This case is before this Court for disposition upon pleas of nolo contendere entered by some of the defendants in this action, after negotiations over a considerable period of time between the parties.

"In the usual criminal case, where criminal intent is the chief element, such negotiations may be, and perhaps on occasion have been, improper. They cannot, in any event, conclude the Court.

"This case, however, lies in a field where the Government might, with equal propriety, have proceeded initially by a civil action in equity or, as here, by a criminal prosecution, either being an action to enforce penalties for the violation of a statute.

"The Court is of the opinion that the wrong here complained of is not malum in se, but rather malum prohibitum, one peculiarly of an economic nature and one in which the attainment of a proper understanding between the parties is of itself a desirable end.

"The suggested disposition of this case upon a basis which has been discussed between the parties, subject to the approval of the Court, was presented to this Court recently. The Court, especially in the light of the facts developed in the so-called 'first' case, from the discussions with counsel for the Government and the defendants, and from a study of this indictment, is familiar with what is here involved.

"Realizing the solemn responsibility of the Court, one which cannot be shared or delegated, I have come to the conclusion that the disposition of this case, as recommended by the Government, is, under all the circumstances fair and in the public interest, and one which this Court should and therefore does approve.

"The fine imposed on each of the defendant corporations and individuals that I have read is each in the sum of $15,000.

"The Court hasn't figured out the costs, except I understand it has been a part of your understanding that the costs may be figured?

"Mr. Donovan: It was agreed between the Government and ourselves, Your Honor, that the costs would be assessed in

the sum of $25,000. That is correct, isn't it?

"Mr. Chaffetz: Applicable to all of the defendants who have changed their pleas this morning.

"The Court: And the costs, in addition to those fines, the sentence of the Court is that those defendants jointly and severally pay costs in the sum of $25,000."

The judgment entered after such proceedings in court provided in part as follows:

"Judgment—June 2, 1938.

"Whereas, the United States of America, acting through its Special Assistants to the Attorney General who have appeared of record herein, and certain of the defendants hereinafter named, acting through their respective attorneys of record, have made an agreement, subject to the approval of this court, for the disposition, as to them, of this cause; and

"Whereas, before evidence taken, this court has approved said agreement as the basis for a *consent judgment:*

"It is therefore ordered, adjudged and decreed that the individuals and corporations hereinafter named be permitted to withdraw their pleas of 'not guilty' herein and to enter their respective pleas of nolo contendere.

"It is further ordered, adjudged and decreed that as to each of the following named corporations and individuals a fine of fifteen thousand (15,000) dollars be levied and collected, and the sum of twenty-five thousand (25,000) dollars be collected as costs, such costs being a joint and several liability of each of said named defendants, to wit: * * *" (Italics supplied).

If there be any doubt, however, as to the intent of Congress from the language of the act and from the proceedings that took place when the plea of nolo contendere was entered, a consideration of the history of the legislation fairly removes any uncertainty that may exist. The purposes and objects of the act may be gathered from the committee hearings, committee reports, and debates in Congress when the act was being considered. That the court may look to the legislative history in construing a statute when there may be doubt on the subject is amply sustained by the authorities. United States v. Mullendore et al., 8 Cir., 35 F.2d 78;

Federal Trade Commission **v.** Raladam Company, 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191; Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611; United States v. Madigan, 300 U.S. 500, 57 S.Ct. 566, 81 L.Ed. 767.

In Federal Trade Commission v. Raladam Company, supra, it became necessary for the Supreme Court to construe the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., and determine whether or not the Commission had power to issue a cease and desist order when competition was not involved. The court stated (page 650 of 283 U.S., page 591 of 51 S.Ct.): "It is true, at least generally, that statements made in debate cannot be used as aids to the construction of a statute. But the fact that throughout the consideration of this legislation there was common agreement in the debate as to the great purpose of the act may properly be considered in determining what that purpose was and what were the evils sought to be remedied."

In United States v. Mullendore et al., supra, it had been urged that a proviso of the statute relating to Indian lands had the effect of removing exemptions from taxation upon such lands. In construing and interpreting the proviso, the court considered the legislative history and the proceedings in Congress in order to ascertain the "true legislative intent." It quoted certain discussions that took place on the floor of the House, and in discussing the right of the court to look to extraneous matters, stated (page 82 of 35 F. 2d): "However, if there be doubt on the subject it is removed, we think, by discussions of the Act when it was under consideration in the House, and to which we may look to ascertain its meaning. Work v. Braffet, 276 U.S. 560, 48 S.Ct. 363, 365, 72 L.Ed. 700; United States v. Missouri Pac. R. Co., 278 U.S. 269, 49 S.Ct. 133, 136, 73 L.Ed. 322. In the Work Case it was said: 'That such was the purpose (of a section of an Act) is established by the Congressional debates;' and in the Missouri Pacific Case the court said: 'Where doubts exist and construction is permissible, reports of the Committees of Congress and statements by those in charge of the measure, and other like extraneous matter, may be taken into consideration to aid in the ascertainment of the true legislative intent.' "

It appears that several so-called anti-trust bills had been introduced in the House. On May 6, 1914, the House Judiciary Committee in a majority report returned for consideration H.R. 15657. Section 6 in the bill (later amended to be Section 5) provided that the judgment or decree would be conclusive in favor of or against the defendant to the full extent that said judgment or decree would constitute an estoppel between the defendant and the United States in any other proceeding. The proviso did not mention criminal proceedings, however, but was limited to a suit or proceeding in equity. A minority house report criticized the proposal to make judgments or decrees conclusive in private suits. It was pointed out that consent decrees saved the Government time and expense, and that if the proposed bill became a law, no defendant would ever consent to a decree if the result thereof would be to bind him conclusively in any third party suit that might be commenced on the same state of facts. The bill was passed in the form recommended by the majority report, with the amendment, however, that the judgment or decree would be conclusive against the defendants, but not in favor of them. In other words, if the decree or judgment was in favor of the defendant, it would not avail the defendant in any third party suit, but if it were against the defendant, it was conclusive.

The house bill was referred to the Senate Judiciary Committee and reported back to the Senate with the recommendation that the section be amended so that the judgment or decree rendered in equity suits or proceedings should be merely prima facie evidence against such defendants in third party suits. After the bill was reported from that committee, it was amended on the floor so as to provide that judgments in criminal proceedings, as well as decrees in equity suits, should be admissible in evidence. At this time, there were no exceptions to the effect of such judgments or decrees. In the debates on the bill, it was pointed out that in the past many consent decrees and judgments had been entered in antitrust proceedings; that the third party provision would probably be an end to further capitulation by the defendants in proceedings instituted by the Government; and that some inducement should be held out to those who consented to the Government's demands. The bill as passed by the Senate, however, provided that final judgments or decrees rendered in any criminal prosecution or suit or proceeding in equity in a government case would be admissible, without any exception, as prima facie evidence against the defendant in a third party suit. The House refused to agree to the Senate's amended bill, and it was referred to a Conference Committee of three Senators and three Representatives. After this conference, and for the first time, the bill went back to both houses with the two provisos which are now found in Section 5 with reference to consent judgments or decrees. It seems clear from the discussion on the floor by members of the congressional committee and other members of Congress that the two exceptions or provisos were designed to encourage defendants to submit to the demands of the Government. The entire colloquy which took place, and which may be pertinent to the question involved herein, is too long to set out in full, but a few excerpts will illustrate the construction given to the act by various members of Congress and the apparent unanimity of opinion as to the effect thereof.

An examination of the Congressional Record indicates that there was substantially common agreement in the debate as to the purposes of the provisos, but there was difference of opinion as to the propriety of permitting a defendant to escape the onus of a judgment in favor of the Government in the event third party suits were commenced, merely because the defendant had surrendered to the Government's demands. Mr. Webb, a member of the House Conference Committee, discussed and explained to the House the changes made by the Conference Committee with reference to Section 6 (afterwards amended to Section 5). He said, in part (Cong.Rec., Vol. 51, Part 16, p. 16276): "It is further provided in that section that the 'prima facie' effect shall not apply to consent judgments that are taken before any evidence is introduced. There has been some criticism of this provision. For the life of me, I cannot see the justice of the criticism. If the Government brings a suit against a trust or monopoly, and it surrenders, we eliminate the effect of the 'prima facie' judgment. If it fights and loses, then the 'prima facie' effect is given final judgment in the suit."

Senator Reed in discussing these provisos on the floor of the Senate stated,

after quoting both provisos in full (p. 15823): "It is my opinion, from that language, that the deduction must be drawn that the exception applies to criminal as well as civil consents. The only way you can consent in a criminal case is by an absolute plea of guilty or the plea of nolo contendere."

Senator Norris spoke against the provisos, and stated in part, after quoting both provisos (p. 16046):

"The real effect of that proviso is to make the section inapplicable to cases in which consent judgments have been taken in cases where pleas of guilty have been entered by the defendant. Why should a judgment rendered upon a plea of guilty be any different from a judgment rendered upon a trial where the evidence was taken? If there is any difference, it is in favor of the plea of guilty, judgment being accepted as true, because the defendant admits it and has never contested it.

"Mr. President, the Government commences suit against a corporation, charging it with violation of the antitrust law. That suit may run along for two or three years and be fought bitterly; there may be some doubt, there may be an honest doubt, as to whether or not the defendant trust is guilty; but when the Government commences a prosecution against a great trust or against a trust magnate, and they or he come into court and plead guilty, is there any doubt of their guilt? Is there any question about it? Do you suppose they would admit guilt if it were not true? Do you suppose they would plead guilty unless they knew that the Government had proof and was going to substantiate its case and that it would get a verdict of a jury finding them guilty? The statement of the proposition, it seems to me, is its answer.

"Then, why should consent judgments be excluded? Why should the private citizen be required to go to the trouble, the expense, and the delay of traveling over the country to hunt up the evidence in a case that he had commenced against a trust when the trust had already been in court and admitted the truth of the allegations? Why put the citizen to that burden?"

Senator Nelson also spoke against the provisos, and the discussion between him and Senator Norris is informative (p. 15939):

"Mr. Norris: In other words, as soon as this bill is enacted and becomes a law, in every case then pending it will be up to the defendants to decide whether they are going to consent to a judgment or whether they are going to take further testimony; and if they take more testimony after the law is passed, then this proviso does not apply to them?

"Mr. Nelson: Yes; that is so.

"Mr. Norris: Is that the Senator's understanding?

"Mr. Nelson: If they take more evidence it would not apply, of course; but there are two provisions here, as the Senator will observe. One of these provisos reads: (The Senator then quoted the two provisos and continued). The argument in favor of those provisions is that it will induce the parties to come in and plead guilty. * * *"

That the Senate was in accord as to its construction of these provisos appears from the debate on the floor and is clearly evident from the colloquy that took place between Senators Borah, Smith and Norris (pp. 16046–47):

"Mr. Borah: I rose, however, to ask, Is there any instance now in which an individual may avail himself of these judgments except in a case which is hereafter tried and contested? As I understand it is limited alone to that class of cases. I may be in error, but the language is: 'That a final judgment or decree hereafter rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States * * *'. Of course, if that stood alone in all cases, whether they were consent judgments or otherwise, the individual could avail himself of the judgment as prima facie proof; but it eliminates from that the following: 'That this judgment shall not apply to consent judgments or decrees entered before any testimony had been taken.' Not to judgments or decrees entered by consent heretofore, but any that are entered in the future, I take it, by consent are eliminated.

"Mr. Norris: But if the Senator will notice from the first part of the section, it reads—

"Mr. Smith of Michigan: From what section is the Senator from Idaho reading?

"Mr. Borah: From Section 5.

"Mr. Norris: It reads 'that a final judgment or decree hereafter rendered'.

"Mr. Borah: Yes; 'in any criminal prosecution'.

"Mr. Norris: So that it would not apply to any judgment that had been rendered heretofore.

"Mr. Borah: Exactly. Not only that, but it does not apply to all judgments hereafter rendered, but only to those rendered in contested cases.

"Mr. Norris: That is absolutely true. Judgments that are hereafter rendered, in order to have them apply, must have been contested judgments.

"Mr. Borah: Then we are narrowed by the provisions of this section to one class of judgments alone, so far as using them as prima facie proof is concerned, and that is to judgments hereafter rendered when there is an actual contest or trial.

"Mr. Norris: Yes; I think so."

During the early part of the debate, Senator Walsh did question that a judgment based on a plea of guilty would be a consent judgment, stating that "no criminal would ever consent that a judgment be entered against him when he pleads guilty." But in the latter part of the debate, no one questioned that a judgment based on a plea of guilty or plea of nolo contendere would be within the proviso. It may be observed that Senator Walsh made no comment as to whether a judgment based on a plea of nolo contendere would be a consent judgment. The fact that in the latter part of the debate no one questioned the apparent agreement as to the construction of the provisos is strongly indicative that there was unanimity of opinion as to the effect thereof. In effect, Congress said to the law violator, "It is to your advantage to capitulate to our demands before any testimony is taken in any equity or criminal proceedings. If you fail, and a decree or judgment is entered against you, such decree or judgment will constitute prima facie proof to any or all private litigants who may have been injured by your unfair practices." That the expediency of the plan appealed to Congress, and that it intended by the provisos to encourage consent judgments in criminal cases, as well as equity proceedings, can scarcely be gainsaid in view of the congressional record.

There is an additional reason why the judgment in Madison case No. 2 is not available to this plaintiff. The act provides that the judgment or decree shall be prima facie evidence against said defendant "as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto." It therefore becomes necessary to determine to what extent this judgment, entered on a plea of nolo contendere, creates an estoppel between the Government and the defendants herein. This requires a consideration of the effect and the nature of a plea of nolo contendere.

▬▬ That a plea of nolo contendere is an admission of guilt only for the purpose of the case is well-established by the authorities. Further, it is quite uniformly recognized by well-considered decisions that such a plea does not create an estoppel, and the defendant is not estopped to deny the facts upon which the prosecution was based in a subsequent civil proceeding. It cannot be used as an admission in a civil case for the same act. Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347; Tucker v. United States, 7 Cir., 196 F. 260, 41 L.R.A.,N.S., 70; White v. Creamer, 175 Mass. 567, 56 N.E. 832; State v. La Rose, 71 N.H. 435, 52 A. 943; State v. Burnett, 174 N.C. 796, 93 S.E. 473, L.R.A.1918A, 955; Berlin v. United States, 3 Cir., 14 F.2d 497; Teslovich v. Fireman's Fund Ins. Co., 110 Pa.Super. 245, 168 A. 354; Johnson v. Johnson, 78 N.J.Eq. 507, 80 A. 119; United States v. Lair, 8 Cir., 195 F. 47; People ex rel. Attorney General v. Edison, 100 Colo. 574, 69 P.2d 246.

In White v. Creamer, supra, in determining whether a conviction on a plea of nolo contendere was admissible in another proceeding, the court stated (page 833 of 56 N.E.): "The principal question which has been argued is as to the effect of the plea of nolo contendere. We do not doubt that a sentence imposed after a plea of nolo contendere amounts to a conviction in the case in which the plea is entered. Com. v. Horton, 9 Pick. 206; Com. v. Ingersoll, 145 Mass. 381, 14 N.E. 449. But we are of opinion that a record showing a conviction on such a plea is not admissible in another proceeding to show that the defendant was guilty. A plea of nolo contendere is not an express confession of guilt, as is a plea of guilty, but is merely an implied confession. If the plea is accepted, the defendant is bound by it, and may be sentenced; but he is not estopped to plead not guilty in an action for the same act."

A very clear and helpful statement regarding the effect of a plea of nolo contendere as an estoppel in another proceeding is set forth in State v. La Rose, supra, wherein the court said (page 946 of 52 A.): "If LaRose were sued for damages under the statute (Pub.St. c. 112 §§ 31, 32), it is clear, according to the authorities, that evidence of his plea of nolo to a complaint for selling the liquor which caused the damage would be no more competent than his conviction upon a plea of not guilty to the same complaint. If the plea is not competent between different parties because it is only a limited admission of the charge, the admission is not made unlimited by a change of parties. The admission must be one thing or the other when made. Its character at the time determines its meaning, not the use attempted to be afterwards made of it. It cannot mean one thing in a subsequent civil suit for damages, and another thing in a subsequent proceeding by the state. The competency of an admission does not depend upon its being made to a party to the suit. If it were an unlimited admission, it would be evidence against the defendant in all subsequent controversies. It is settled by the authorities that it is not. Therefore, there being no ground for an estoppel, the plea can have no greater effect in a proceeding to which the state is a party than in a civil suit, and it is therefore inadmissible against the defendant. * * *"

In Teslovich v. Fireman's Fund Ins. Co., supra, in an action on an insurance policy, the defendant offered to prove that the plaintiff was indicted for arson, pleaded nolo contendere, and was sentenced. The instant action was a civil suit upon the policy for the losses sustained by the fire involved in the criminal proceeding. The ruling of the trial court in sustaining plaintiff's objection to the record in the arson case was affirmed by the Appellate Court on appeal, the court stating (page 356 of 168 A.): "'Although the great majority of the citations which we have made are of dicta of text writers and judges, and we have not found many instances of actual decisions upon the question in civil actions, it appears that the consensus of professional and judicial opinion so strongly supports the view expressed by Rice, P. J., in the case first above cited [Com. v. Ferguson, 44 Pa. Super. 626], to the effect that the plea of nolo contendere amounts only to an implied confession, and is the equivalent of a plea of guilty, "in its effect upon the case" and "cannot be used against the defendant in any civil suit for the same act," that in our opinion we should follow that statement, notwithstanding its character as an obiter dictum.'"

The following excerpts from the opinions noted below reflect the clear weight of authority as to the effect of a plea of nolo contendere:

"The plea of nolo contendere has the same effect as a plea of guilty in the trial of a criminal case. It is a confession only for the purpose of the criminal prosecution, and does not bind the defendant in a civil suit for the same wrong." (Citing cases). Berlin v. United States, 3 Cir., 14 F.2d 497, 498.

"The effect of the plea under discussion is well stated in 12 Cyc. at page 354 as follows: 'A plea of nolo contendere, which is still allowed in some jurisdictions, is an implied confession of the crime charged, and, as regards the case in which it is entered, is equivalent to a plea of guilty, except that it gives to the accused the advantage of not being estopped to deny his guilt in a civil action based upon the same facts as he would be upon a plea of guilty." Johnson v. Johnson, 78 N.J.Eq. 507, 80 A. 119, 121.

"The only advantage in a plea of nolo contendere gained by the defendant is that it gives him the advantage of not being estopped to deny his guilt in civil action based upon the same facts. Upon a plea of guilty, entered of record, the defendant would be estopped to deny his guilt, if sued in a civil proceeding." State v. Burnett, 174 N.C. 796, 93 S.E. 473, 474, L.R.A.1918A, 955.

"In fact, the defendant admitted that he committed the offense charged within that district for his plea of nolo contendere is in effect a plea of guilty to every essential element of the offense well pleaded in the charge against him, and warrants his conviction thereof without more [citing cases] though the conviction cannot rightly be used against him in any other case. Such is the effect of the plea of nolo contendere." (Citing cases). United States v. Lair, 8 Cir., 195 F. 47, 52.

"The plea of nolo contendere entered in the forum of the indictment, while effective for sentence there, was not other-

wise or elsewhere conclusive. 'When accepted by the court, it becomes an implied confession of guilt, and, for the purposes of the case only, equivalent to a plea of guilty. '* * * The difference between it and a plea of guilty appears simply to be that, while the latter is a confession binding defendant in other proceedings, the former has no effect beyond the particular case.' 16 C.J. 404, § 739." (Citing cases). People v. Edison, 100 Colo. 574, 69 P.2d 246, 248.

"But, even if we regard the implied confession as a petition which in Hawkins' time had to be accepted as tendered, in modern practice it has been transformed into the formal plea of nolo contendere. Like the implied confession, this plea does not create an estoppel; but, like the plea of guilty, it is an admission of guilt for the purposes of the case." Hudson v. United States, 272 U.S. 451, 455, 47 S.Ct. 127, 129, 71 L.Ed. 347.

■ The Clayton Act does not attempt to change the effect or scope of a judgment entered on a plea of nolo contendere. Congress was presumably cognizant of the long line of decisions which hold that a plea of nolo contendere does not create an estoppel as between the Government and the defendant. Obviously, therefore, if the judgment in Madison case No. 2 is not an estoppel as between the Government and the defendant, it can have no probative value in the trial of this case in a third party suit. By the very terms of the act, it is limited in its scope to such matters respecting which the judgment would be an estoppel between the Government and the defendant.

These defendants have not unqualifiedly admitted the truth of the charge in the indictment. The effect of their pleas was a restricted and limited admission for the purpose of that case only. In light of the authorities, defendants are not estopped to deny in any other proceeding as between them and the Government, the truth of the allegations in the indictment. Section 5 refers to a judgment "to the effect that defendant has violated said laws." The statute does not say that a judgment of conviction shall be prima facie evidence. It contemplates a judgment which in effect is tantamount to a finding that there has been a violation of the Sherman Anti-Trust Act. A judgment entered on a plea of nolo contendere does not constitute a finding on any fact question. It does not establish the truth of the facts set forth in the indictment. Cases will be found where a sentence upon a plea of nolo contendere.is a conviction within the terms·of a statute applying to second offenses, but such statutes depend upon the mere fact of a conviction and sentence, and we are concerned in the instant case with an alleged admission of the facts set up in the indictment. The salient principle to be kept in mind is the fact that there has been no adjudication of any facts in Madison case No. 2 by reason of the plea of nolo contendere and the judgment entered thereon.

It follows, therefore, that the defendants' motions to strike any and all reference in the amended complaint to the Madison cases must be granted. If the Circuit Court of Appeals of the Seventh Circuit affirms the judgment of the lower court, and the judgment thereafter becomes final within the meaning of the statute, as hereinbefore indicated, plaintiff may then by appropriate amendment or supplemental complaint, plead the "final judgment" and adopt the procedure that Congress contemplated.

It is ordered that the following specific paragraphs and portions of paragraphs of the amended complaint referred to in the moving papers are stricken out as immaterial, irrelevant, and prejudicial:

All of paragraphs 27 and 28, and the words "and the exhibit annexed thereto" in paragraph 31; all of paragraph 32, and the words "and the annexed exhibits set forth" in paragraph 35; all of paragraphs 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45; all of Exhibit B and the words "and because of the facts set forth in Exhibit C" in paragraph 47; and the words "and. as set forth in the copy of said indictment in Madison Oil case No. 2, Exhibit C hereto attached" in paragraph 48; all of Exhibit C; all allegations in said complaint relating to, based upon, or mentioning Exhibits B and C; all allegations in said complaint wherein Exhibits B and C are made a part of said complaint. Any and all other parts of the amended complaint or the exhibits attached thereto, referring to the Madison cases, are also stricken out for the reasons above stated.

There are certain other portions of the motions made by certain defendants which seek to strike out certain parts of the amended complaint for the reasons that they are indefinite and uncertain, and

other alternative relief is asked for. The motions relating to such matters were not argued or briefed, and presumably were subordinated to the more important parts of the motions which relate to the Madison cases. It may be that the moving parties, in view of the ruling herein, will not care to press the remainder of their motions at this time, but so that the rights of the parties may be reserved, it is ordered that the portions of the motions not ruled upon herein be denied without prejudice.

Plaintiff may desire to amend its complaint further in view of the order herein, and it is therefore ordered that it may file any further amendment to its complaint within ten days after the filing of the within order, or within such further time as the Court may subsequently determine.

Defendants, and each of them, must answer, plead, or otherwise move as to the amended complaint as modified by this order within twenty days after the date hereof. If plaintiff amends its complaint, however, within the period allowed by this order, defendants, and each of them, need not plead or move as to the amended complaint now on file, but are given fifteen days after the filing of such second amended complaint in which to answer, plead, or otherwise move.

An exception is allowed to the plaintiff.