73 F.2d 40 (1934)
THE ANSALDO SAN GIORGIO I.[*]
RHEINSTROM BROS. CO.
v.
SOCIETA NAZIONALE DI NAVIGAZIONE.
No. 179.
Circuit Court of Appeals, Second Circuit.
September 17, 1934.
*41 Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar, Henry N. Longley, and F. Herbert Prem, all of New York City, of counsel), for appellant.
Loomis & Ruebush, of New York City (Homer L. Loomis and Thomas F. Peterson, Jr., both of New York City, of counsel), for appellee.
Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
SWAN, Circuit Judge.
This suit was begun in March, 1922, to recover for damage in transit to three lots of cherries in brine shipped from Italian ports in July, 1920. An interlocutory decree in favor of the libelant was affirmed by this court without opinion in June, 1928. Rheinstrom Bros. Co. v. Ansaldo San Giorgio I, 26 F. (2d) 1016. A writ of certiorari was denied in Societa Nazionale di Navigazione v. Rheinstrom Bros. Co., 278 U. S. 633, 49 S. Ct. 31, 73 L. Ed. 550. The case then went to a commissioner to compute the recoverable damages. Hearings before the commissioner were begun in December, 1930. He filed his report in October, 1932, finding the libelant's damages, including interest, to be $26,006.99. Upon exceptions to his report, the District Court sustained the commissioner's findings of fact, but concluded that by reason of a certain clause of the bill of lading no damages were recoverable. On March 23, 1933, a decree was entered dismissing the libel without costs. The libelant appealed. Thus this venerable controversy has plodded its weary way to this court for a second time. Comment upon the lapse of years since the cherries in question began their voyage would be superfluous.
Before coming to the merits of the appeal, we must consider a contention by the appellee that no appeal will lie from the decree as entered because it contains a recital that it was made on motion of proctors for the libelant. Numerous authorities are cited to the effect that a party cannot appeal from an order entered on his own motion. Marks v. Leo Feist, 8 F.(2d) 460, 462 (C. C. A. 2); United States v. Babitt, 104 U. S. 767, 768, 26 L. Ed. 921; Raymond v. Tiffany, 115 App. Div. 350, 352, 100 N. Y. S. 807; Munson Realty Co. v. Melrose Bond & Mortgage Corp., 232 App. Div. 832, 834, 248 N. Y. S. 614; McAlpin v. Stoddard, 54 Misc. 647, 650, 105 N. Y. S. 9. But it is clear from the record that this was not a decree to which the libelant consented in any such sense as to bar an appeal. A consent decree is an agreement of the parties under the sanction of the court as to what the decision shall be. See Kelly v. Town of Milan, 21 F. 842, 865 (C. C. W. D. Tenn.); Hodgson v. Vroom, 266 F. 267, 268 (C. C. A. 2); Wilson v. Haber Bros., 275 F. 346, 347 (C. C. A. 2); Davey Tree Expert Co. v. Frost & Bartlett Co., 300 F. 680, 681 (D. C. Conn.). Here the record shows that the entry of the final decree merely carried into effect the court's previous decision on a litigated issue. The appeal is properly here.
On the merits, the decision turns upon the validity of a provision in the bills of lading reading as follows:
"11. In the event of claims for loss, damage or short delivery, the same shall be adjusted on the basis of the invoice value of the entire shipment, adding expenses necessarily incurred."
The commissioner found a short delivery of 45 barrels, damage of 100 per cent. to 117 barrels, and additional damage equivalent to *42 the loss of 419 barrels, making a total loss of 581 barrels. Since there was no proof that the shipper was offered an alternative freight rate under which the carrier's liability would be unlimited, he held the above-quoted clause of the bills of lading to be invalid and took as the measure of damages the market value of 581 barrels of sound cherries at the port of destination on the day when delivery should have been made. The District Judge, however, concluded that the clause was valid, and directed that the damages should be computed by determining the amount by which the invoice value of the entire shipment, plus freight, exceeded the actual arrived value of the entire shipment. Since the libelant did not prove as to any of the three shipments that the invoice value of the goods plus freight was greater than the actual arrived value, the libel was dismissed.
In the absence of a valid stipulation to the contrary, a common carrier's liability for negligent loss or injury of goods in transit is measured by the market value of the goods at destination, in the condition in which they should have arrived, on the date when they should have been delivered. New York, L. E. & W. R. Co. v. Estill, 147 U. S. 591, 616, 13 S. Ct. 444, 37 L. Ed. 292; St. Johns N. F. Shipping Corp. v. S. A. Companhia Geral, etc., 263 U. S. 119, 125, 44 S. Ct. 30, 68 L. Ed. 201. It is equally well settled that the carrier may not limit its liability for negligence to a stipulated value for the goods unless the shipper is offered a choice between limited and unlimited liability at alternative rates. Hart v. Penn. R. Co., 112 U. S. 331, 5 S. Ct. 151, 28 L. Ed. 717; Union Pac. R. Co. v. Burke, 255 U. S. 317, 41 S. Ct. 283, 65 L. Ed. 656. In The Merauke, 31 F.(2d) 974, this court, following the decision in Kilthau v. Int. Merc. Marine Co., 245 N. Y. 361, 157 N. E. 267, applied the principle to invalidate a stipulation which purported to limit liability to the invoice cost of the goods. The Merauke involved a true limitation clause, which could inure to the benefit of the carrier only. We intimated that a different result might perhaps obtain in the case of a mutual agreement to accept the invoice cost of the damaged goods as the measure of their value in sound condition at port of destination. A similar intimation may be found in the Kilthau Case. Such an agreement may be of advantage to either party; it guards against fluctuations in the market while the goods are in transit, furnishes a convenient standard for measuring the damage in case of injury or loss, and tends to promote prompt settlements by excluding extravagant claims of market value at destination. As the District Judge pointed out in the opinion below, there is substantial authority, although not unanimous, in the state courts for holding such an agreement valid even though there is no reduced freight rate to support it. In the federal courts the question does not seem to have been squarely decided; nor do we find it necessary to decide it in the case at bar.
The clause under consideration does not substitute invoice value for market value of the goods lost or injured by the carrier's negligence. It provides that claims "shall be adjusted on the basis of the invoice value of the entire shipment." This means, as the appellee contends and the District Court held, that the invoice value of the entire shipment, not the invoice value of the lost or damaged goods, is to constitute the basis for computing whether damages have been sustained by the shipper. Thus, if there were a short delivery of 50 cases out of a shipment of 100 cases, but the market value at port of destination of the goods delivered was equal to the invoice value of the 100 cases, plus freight, the carrier would pay nothing for its negligent loss of half the shipment; and a similar result would obtain if half the cases were damaged but the market value of all the goods, damaged and undamaged, was greater than their invoice value plus freight. Indeed, in the case at bar, although a substantial part of the cherries were lost or damaged by the carrier's negligence, it escaped liability because the arrived market value of the cherries in each shipment exceeded the invoice value of the entire shipment plus prepaid freight. A contract which would thus exempt a carrier from liability for losses resulting from its negligence is so unreasonable that it must be held contrary to public policy and void. None of the cases relied upon by the appellee involves a clause purporting to measure damages by the difference between the invoice value of the entire shipment and the market value of the goods delivered when part of the shipment has been lost or damaged; and no decision has been found sustaining the validity of such a clause. Dicta by Judge Addison Brown in Pearse v. Quebec S. S. Co., 24 F. 285, 286 (D. C. S. D. N. Y.), expressly deny the validity of the contract if it be interpreted in this manner. See, also, Boston & M. R. R. v. Piper, 246 U. S. 439, 38 S. Ct. 354, 62 L. Ed. 820, Ann. Cas. 1918E, 469. In the opinion below, the District Judge stated that he was following the rule of damages applied under analogous *43 clauses in Gulf, C. & S. F. R. Co. v. Texas Packing Co., 244 U. S. 31, 37 S. Ct. 487, 61 L. Ed. 970, Duplan Silk Co v. Lehigh Valley R. Co., 223 F. 600 (C. C. A. 2), and The Oneida, 128 F. 687 (C. C. A. 2). We do not so read these authorities. In the Texas Packing Company Case the shipment consisted of five cars of dressed poultry. As the damage arose from a failure to re-ice en route, it seems probable that the entire shipment was injured, and we find nothing in the opinion to indicate that, in case of damage to only part of a shipment, the damages are to be measured by the difference between the invoice value of the entire shipment and the arrived market value of the goods damaged and undamaged. This is likewise true of the opinions in the other two cases cited.
For the foregoing reasons we hold that clause 11 is invalid. Accordingly the decree dismissing the libel is reversed, with costs, and it is ordered that the libelant recover damages as found by the commissioner.
NOTES
[*] Writ of certiorari granted 55 S. Ct. 217, 79 L. Ed. ___.