**COMMONWEALTH EDISON COMPANY et al., Plaintiffs-Appellants,**

v.

**ALLIS–CHALMERS MANUFACTURING COMPANY et al., Defendants-Appellees.**

**No. 14024.**

United States Court of Appeals Seventh Circuit.

Sept. 12, 1963.

Rehearing Denied Oct. 30, 1963.

Knoch, Circuit Judge, dissented.

Robert W. Bergstrom, Lee A. Freeman, Charles A. Bane, Seymour F. Simon, William J. Froelich, Thomas C. McConnell, Chicago, Ill., Martin R. Paulsen, Milwaukee, Wis., for appellant.

John T. Chadwell, Harold T. Halfpenny, John P. Ryan, Jr., Chicago, Ill., MacAsbill, Washington, D. C., Edward R. Adams, Brainerd Chapman, John Paul Stevens, W. Donald McSweeney, Holmes Baldridge, Hammond E. Chaffetz, Edward R. Johnston, Earl E. Pollock, Charles M. Price, Chicago, Ill., for appellee.

Before KNOCH, KILEY, and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This court allowed plaintiffs [1] to appeal from an order striking from the complaints in 226 related treble damage civil antitrust cases all references to judgments, on pleas of nolo contendere and guilty, entered in the 1960 Philadelphia criminal antitrust cases.

The District Court certified [2] the following question, decided in its order, as an important and controlling question of law in those cases: whether plaintiffs in their private antitrust cases may have the prima facie evidentiary benefit provided by § 5(a) of the Clayton Act [3] with respect to judgments entered on pleas of nolo contendere and guilty in prior crim-

---

1. In the civil "electrical equipment antitrust" cases.

2. Pursuant to 28 U.S.C. § 1292(b).
3. 15 U.S.C. § 16.

inal antitrust cases against the same defendants. The question is of first impression in this Circuit.[4]

In § 5(a) of the Clayton Act.[5], Congress provided, *inter alia*, that plaintiffs in treble damage actions could make use of final judgments in prior civil or criminal antitrust proceedings brought by the Government as prima facie evidence of violations of antitrust laws, except in cases terminated by "consent judgments * * * entered before any testimony has been taken." The complaints before us allege the violations by virtue of defendants' pleas and the corresponding judgments in the Philadelphia criminal cases. Defendants moved to strike all references to the prior criminal proceedings.

The District Court granted the motion, deciding that judgments on both nolo contendere and guilty pleas came within the term "consent judgments" in the proviso in § 5(a) and were therefore unavailable to plaintiffs for the prima facie benefit.

We see no merit in plaintiffs' contention that the exclusionary proviso [" * * * this section shall not apply to consent judgments or decrees entered before any testimony has been taken * * * "] in § 5(a) does not extend to judgments in criminal cases. We think the plain words of the statute indicate Congress intended to include judgments in criminal cases in the proviso. The main section of § 5(a) uses the words "in any civil or criminal proceeding." The exclusionary proviso does not expressly refer either to civil or criminal proceedings; it merely says "judgments or decrees." When the section was originally enacted, however, it contained a temporary proviso, since eliminated, stating: "Provided, further, This section shall not apply to consent judgments * * * rendered in criminal proceedings * * * now pending * * *."

The exclusionary proviso with which we are concerned was located between the clear words in the main section and the temporary proviso. It is our opinion that Congress did not use the term "judgment" in the exclusionary proviso in a sense different from that in the main section and in the temporary proviso. Had Congress intended in the exclusionary proviso to refer only to civil judgments, we think it would have clearly said so.

■ We do not agree either that in criminal cases there can be no consent judgments. There is ample authority that judgments entered on pleas in criminal cases are within the proviso. Twin Ports Oil Co. v. Pure Oil Co., 26 F.Supp. 366 (D.Minn.1939), aff'd, 119 F.2d 747 (8th Cir. 1941), cert. denied, 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516, Barnsdall Refining Corp. v. Birnamwood Oil Co., 32 F.Supp. 308, 311 (E.D.Wis.1940), Alden-Rochelle, Inc. v. ASCAP, 3 F.R.D. 157 (S.D.N.Y.1942), United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167 (S.D.N.Y.1955), Atlantic City Electric Co. v. General Electric Co., 207 F. Supp. 620 (S.D.N.Y.1962).

The decisions in those cases involved pleas of nolo contendere and therefore also support the District Court's ruling that judgments entered on pleas of nolo contendere are within the proviso and thus are unavailable for the prima facie benefit of § 5(a). We agree with Judge Learned Hand's statement that such judgments are "plainly * * * within the [exclusionary] proviso * * *."

---

4. The question is pending in the U. S. Courts of Appeals for the Fifth and Ninth Circuits.

5. The section (15 U.S.C. § 16) provides, in pertinent part, as follows:
   "(a) A final judgment or decree * * * rendered in any civil or criminal proceeding brought by or in behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States * * *, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken * * *."

Pfotzer v. Aqua Systems, Inc., 162 F.2d 779, 784 (2d Cir. 1947).

There are clear elements of consent in a plea of nolo contendere. The plea requires the consent of the District Court. Rule 11, Federal Rules of Criminal Procedure. And in practice pleas of nolo contendere are rarely accepted by courts without the approval of the Government after compromise negotiations with the Government. The record of the Philadelphia criminal proceedings in the case at bar bears that out. See also Twin Ports Oil Co. v. Pure Oil Co., 26 F.Supp. 366, 372 (D.Minn.1939), and 152 A.L.R. 270–271.

■ The principal issue is whether judgments entered on guilty pleas by defendants in criminal anti-trust actions are within the proviso, and are thus available for the prima facie benefit of § 5(a). It is our view that the exclusionary proviso cannot apply to judgments on guilty pleas.

The decisions in Twin Ports Oil Co. v. Pure Oil Co., 26 F.Supp. 366 (D.Minn. 1939) and Barnsdall Refining Corp. v. Birnamwood Oil Co., 32 F.Supp. 308, 311 (E.D.Wis.1940) involved only the effect of pleas of nolo contendere. This fact weakens the dicta in both cases as to guilty pleas. Also, the record in the case at bar indicates that, despite those decisions, some of the defendants in the Philadelphia proceedings were anxious to avoid guilty pleas.

We see no reason to refer to the congressional debates for the precise meaning of the proviso. Each party here has cited parts of that legislative history with seeming support. We agree with Judge Feinberg in Atlantic City Electric Co. v. General Electric Co., 207 F.Supp. 620, 625 (S.D.N.Y.1962) that the legislative history is "inconclusive" on this question.

We think that Congress did not intend that the proviso include guilty pleas. There is the congressional purpose in enacting § 5(a). On this broader question, the legislative history is helpful. The objective was to provide more effective enforcement of the antitrust laws. On the one hand, Congress intended to facilitate the bringing of treble damage suits by private antitrust litigants. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951). By giving those litigants the prima facie benefit of judgments obtained by the Government, Congress intended to save those private litigants great time and expense.[6] And there is evidence that the section has had the effect of encouraging private treble damage actions.[7] On the other hand, by enacting the exclusionary proviso, Congress sought to aid antitrust enforcement by encouraging defendants to capitulate, at a saving of time and expense to the Government.[8] Both purposes of § 5(a) and its proviso serve the broad objective of antitrust enforcement, and although the two purposes are distinct, " * * * an

---

6. In a Special Message to the Congress, January 20, 1914, President Wilson stated: "I hope that we shall agree in giving private individuals who claim to have been injured by these processes the right to found their suits for redress upon the facts and judgments proved and entered in suits by the Government * * *. It is not fair that the private litigant should be obliged to set up and establish again the facts which the Government has proved. He can not afford, he has not the power, to make use of such processes of inquiry as the Government has command of. Thus shall individual justice be done while the processes of business are rectified and squared with the general conscience." 51 Cong.Rec. 1964 (1914).

7. In 1951, the Assistant Attorney General in charge of the antitrust division of the Department of Justice testified that private suits for treble damages were, for the first time, becoming of substantial aid to the Department in enforcing the antitrust laws. He referred to those private, treble damage suits as "a substantial deterrent." Hearings before the Subcommittee on Study of Monopoly Power of the Committee on the Judiciary, on H. R. 3408, 81st Cong., 2d Sess., pt. 3, p. 15. Cited in United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167, 173 (S.D.N.Y.1955).

8. 51 Cong.Rec. 15824, 16004 (1914).

accommodation must be made to preserve the essence of both." [9]

■ Furthermore, a guilty plea is not a consent plea resulting in a consent judgment. The authorities are uniform that the term "consent judgments" applies to judgments entered by courts following the mutual agreement of the parties. The Ansaldo San Giorgio I, 73 F.2d 40, 41 (2d Cir. 1934), aff'd sub nom. The Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 (1935), United States v. Hartford-Empire Co., 1 F.R.D. 424, 427 (N.D.Ohio 1940).[10] But a guilty plea in a criminal case is an entirely unilateral act. It does not require the consent of the Government, and there is no authority for the view that courts may reject a plea of guilty, provided it is made "voluntarily with understanding of the nature of the charge." Rule 11, Federal Rules of Criminal Procedure; Atlantic City Electric Co. v. General Electric Co., 207 F.Supp. 620, 626 (S.D.N.Y.1962).[11]

■ If guilty pleas were held to be within the exclusionary proviso, the private litigant, who is injured by the antitrust violation and who is a subject of Congress' concern in enacting § 5(a), would be, by the defendant's plea of guilty, thereby denied the total benefit of that section. Although that result may achieve one purpose of the section in aiding enforcement of the antitrust laws, we think it would help antitrust violators at the direct expense of the victims of those violations. Congress did not intend to confer a benefit in the body of § 5(a), indicating a primary purpose, and, through the proviso, allow its frustration by the unilateral act of an antitrust violator.

There are also the considerations of self-interest of an accused antitrust law violator. There is no reason for an accused violator to make a defense if guilty pleas are within the proviso: The guilty plea must be accepted, the judgment could not be used in a subsequent treble damage suit and the penalties would almost always be less than the cost of litigation and less painful than a protracted criminal trial. An antitrust defendant in a criminal case would surely consider the effect on its public image and its business that a long trial with damaging evidence might have, as compared with the quick and relatively less painful effect of a plea of guilty. That consideration would be even more significant if guilty pleas are within the proviso.

In conclusion, we think that our construction of § 5(a) strikes the balance Congress contemplated between the dual specific purposes of § 5(a). The promotion of private treble damage suits by injured parties and the inducement of capitulation by defendants in proceedings brought by the Government are both valuable in achieving a more effective enforcement of the antitrust laws. Congress intended a choice be made as to the respective values of these purposes by the exercise of the District Court's discretion in a criminal antitrust proceeding. The Court can in a suitable case accept a plea of nolo contendere and save the Government both time and expense; in another case—perhaps where the Government's proof is more than adequate, and the offense of a more serious nature—the court may choose, on Government objection to reject a defendant's capitulation by the nolo plea, thereby serving the specific objective of aiding and promoting the treble damage ac-

9. Mr. Justice Harlan, dissenting in Wood v. Georgia, 370 U.S. 375, 396, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).

10. Matthews v. Looney, 132 Tex. 313, 123 S.W.2d 871, 872 (1939), Hargis v. Hargis, 252 Ky. 198, 66 S.W.2d 59 (1933). Black's Law Dictionary, at 978 (4th ed. 1951) gives the following definition: "A judgment, the provisions and terms of which are settled and agreed to by the parties to the action."

11. See also United States v. Morin, 265 F.2d 241, 245 (3rd Cir. 1959), representative of the great number of cases indicating that the discretion allowed by Rule 11 as to guilty pleas is limited to the questions of voluntariness and understanding on the part of the individual defendant.

tions of injured parties. In either case, more effective enforcement of the antitrust laws is achieved, and the choice between the specific objectives of § 5(a) is vested in the District Court, not the antitrust violator.

For the reasons given, the order of the District Court is *affirmed* insofar as it decides that judgments entered on pleas of nolo contendere are within the exclusionary proviso, and *reversed* insofar as it decides that judgments entered on pleas of guilty are within the exclusionary proviso.

KNOCH, Circuit Judge (dissenting).

Reluctantly I find myself unable to agree with Judge Kiley that guilty pleas take a case out of the scope of "consent judgments" within the meaning of § 5(a) of the Clayton Act. I do not follow the reasoning that a plea of guilty cannot be a "consent" to judgment because it requires no further act by the government and may not be rejected by the court if it is voluntarily made with understanding of the nature of the charges.

A plea of guilty is not a unilateral act taken by the defendant in a legal vacuum. It is a direct response to accusations by the government. The accused accepts those accusations without proof. He agrees to the government's allegations of fact and consents to whatever judgment the court may impose. There is nothing further for the government to do; the government has prevailed; the government has secured all that the government sought in bringing the charges. It is as though an offer were made and accepted as it stands. Such an acceptance is not a counter-offer requiring the further consent of the offeror to make a contract.

Further, I do not find the legislative history "inconclusive." My study of it leads me to the conclusion that a primary Congressional purpose was to induce capitulation of defendants to avoid protracted litigation and to impose additional burdens by way of simplifying individual civil suits only against those who exposed the government to extended and expensive unnecessary trials.

As a plea of nolo contendere requires the approval of the court which may or may not be given, the sole way in which a defendant can conclusively consent to judgment is by way of a plea of guilty.

I would affirm the judgment of the District Court.