**GENERAL ELECTRIC COMPANY et al. and Carrier Corp., Appellants,**

v.

**The CITY OF SAN ANTONIO et al., Appellees.**

**CITY OF SAN ANTONIO et al., Appellants,**

v.

**GENERAL ELECTRIC COMPANY et al., Appellees.**

**No. 20279.**

United States Court of Appeals Fifth Circuit.

June 24, 1964.

10. 52 Stat. 830, 15 U.S.C. § 717o.

David T. Searls, Leroy Jeffers, Ross N. Sterling and Vinson, Elkins, Weems & Searls, Houston, Tex., Carl Wright Johnson, San Antonio, Tex., Jay H. Brown and Brown, Sparks & Erwin, Austin, Tex., Hilton E. Howell and Naman, Howell, Smith & Chase, Waco, Tex., for General Electric Co.

Walter P. Brenan, San Antonio, Tex., David Bland and Barrow, Bland, Rehmet & Singleton, Houston, Tex., for A. B. Chance Co., Cornell-Dubilier Electric Corp., Federal Pacific Electric Co.

B. J. Bradshaw, Fulbright, Crooker, Freeman, Bates & Jaworski and Leon Jaworski, Houston, Tex., for Allis-Chalmers Mfg. Co. and Hubbard and Co.

Josh H. Groce and Groce & Hebdon, San Antonio, Tex., for C. H. Wheeler Mfg. Co., Ohio Brass Co., H. K. Porter Co., Inc., and Lapp Insulator Co.

John H. Wood, Jr., and Beckmann, Stanard, Wood & Vance, San Antonio, Tex., W. N. Blanton, Jr., of Butler, Binion, Rice & Cook, Houston, Tex., for I-T-E Circuit Breaker Co.

John J. McKay and McKay & Avery, Austin, Tex., for McGraw-Edison Co., Maloney Électric Co., and Wagner Electric Co.

W. Pat Camp and William C. Church, Jr., San Antonio, Tex., for McGraw-Edison Co.

Bond Davis and Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Tex., for Southern States Equipment Corp., Wagner Electric Corp., and Maloney Electric Co.

Ernest W. Clemens and Clemens, Knight, Weiss & Spencer, San Antonio, Tex., for Sangamo Electric Co.

Fred B. Werkenthin and Herring & Werkenthin, Austin, Tex., for Southern States Equipment Corp.

J. Burleson Smith and Cox, Smith & Smith, San Antonio, Tex., Donald S. Thomas and Clark, Thomas, Harris, Denius & Winters, Austin, Tex., for Westinghouse Electric Co.

Thad T. Hutcheson and Hutcheson, Taliaferro & Hutcheson, Houston, Tex., for Joslyn Mfg. & Supply Co., and Porcelain Insulator Corp.

Ben G. Sewell and McGregor, Sewell & Junell, Houston, Tex., for Worthington Corp.

W. L. Matthews, James D. Baskin, Jr., Richard E. Goldsmith, Matthews, Nowlin, MacFarlane & Barrett, San Antonio, Tex., Crawford B. Reeder, City Atty., San Antonio, Tex., for City of San Antonio, Tex.

Robert E. Sher and Sher, Oppenheimer & Harris, Washington, D. C., James W. Wilson and Powell, Rauhut, McGinnis, Reavley & Lochridge, Austin, Tex., for City of Austin, Tex., Lower Colorado River Authority, City of Brady, Tex., and Brazos Electric Power Cooperative, Inc., et al.

Doren R. Eskew, City Atty., Austin, Tex., for City of Austin, Tex.

Mac Umstattd, General Counsel Lower Colorado River Authority, Austin, Tex., for Lower Colorado River Authority.

Carlton J. Smith, Waco, Tex., for Brazos Electric Power Cooperative, Inc., et al.

Before HUTCHESON and GEWIN, Circuit Judges, and CONNALLY, District Judge.

GEWIN, Circuit Judge:

This interlocutory appeal presents the following two questions arising in civil antitrust litigation in the United States District Court for the Western District of Texas: (1) whether the statute of limitations set forth in Section 4B and 5(b) of the Clayton Act, 15 U.S.C. §§ 15b, 16(b),[1] is tolled by fraudulent concealment; and (2) whether the plaintiffs in private antitrust treble damage suits may use the judgments in prior criminal antitrust proceedings entered pursuant to pleas of guilty as prima facie evidence against the same defendants under the provisions of Section 5(a) of the Clayton Act.[2] If such pleas of guilty are deemed to be "consent judgments" within the exclusionary terms of the proviso of Section 5(a) the plaintiffs can not have the prima facie evidentiary benefit contemplated by the first part of the section. Responsive to appropriate pleadings, the District Court answered the first question in the affirmative, the second in the negative, and made the certification that a controlling question of law was involved. Petition for leave to appeal under 28 U.S.C. § 1292(b) was granted by this court.

The defendants are some fifty-two electrical companies. The plaintiffs are various cities and other purchasers of electrical equipment manufactured by the defendants.[3] As to the first question the trial court ruled against the defendants and concluded:

"* * * that the aforesaid motions to strike or to dismiss or for partial summary judgments predicated upon the statute of limitations contained in Section 4B of the Clayton Act should be and the same are hereby overruled."

1. Section 16(b) provides that the running of the statute of limitations in respect of every private right of action shall be suspended during the pendency of civil or criminal antitrust litigation instituted by the United States.

2. The pleas in question were entered in criminal proceedings against the defendants in the United States District Court for the Eastern District of Pennsylvania in 1960, commonly called the "Philadelphia proceedings."

3. To assist in meeting the challenge to the courts, presented by the multitude of treble damage suits arising out of the 1960 prosecutions of large electrical manufacturers, a national coordinating committee has been established with a view toward uniform action by the District Courts. See Kansas City, Mo. v. Federal Pac. Elec. Co., 210 F.Supp. 545 (W.D. Mo.1962.)

As to the second question the court ruled in favor of the defendants and ordered:

"It is, therefore, ORDERED by the Court that prima facie effect will not be given by the Court to any judgments in criminal proceedings heretofore held in the United States District Court for the Eastern District of Pennsylvania and that no instruction will be given to the juries who will try these civil actions to the effect that judgments in said criminal proceedings will be given prima facie effect under Section 5a of the Clayton Act (15 U. S.C., Sec. 16a)."

As to the second question, the court's order related both to pleas of guilty and pleas of *nolo contendere*. No question is raised as to the ruling of the court on *nolo contendere* pleas. The questions will be dealt with in the order stated.

## I

Prior to the adoption of Section 4B of the Clayton Act, 15 U.S.C. § 15b,[4] effective January 7, 1956, there was no federal statute of limitations on private treble damage suits brought under 15 U.S.C.A. § 15. The federal courts looked to the state statutes and, in effect, "borrowed" state statutes and applied them in appropriate cases. State laws varied and forum shopping was evident. Section 4B was enacted to correct these practices. Long before the enactment of Section 4B the doctrine of fraudulent concealment was recognized by the federal courts. Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), was the first case to recognize the doctrine as applied to the running of a period of limitation in federal cases, and it was there stated: "The statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing * * *." The doctrine was applied to the land patent act. Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918). In the famous case of Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), the Supreme Court declined to "borrow" state law [5] and applied the fraudulent concealment doctrine to a federally created equitable right. Mr. Justice Frankfurter, speaking for the court, declared: "This equitable doctrine is read into every federal statute of limitation." More recently, the 2nd Circuit, in a cause of action which arose in 1931, dealt with the doctrine, and Judge Friendly stated the rule as follows:

"We hold that the federal rule as to the effect of concealment on the running of a period of limitation applies to an action for treble damages under the Clayton Act even when a state statute is used to measure the period." Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 90 A.L.R.2d 252 (2nd Cir. 1961).[6]

The first court of appeals to deal with the question now before us was the 8th Circuit in Kansas City, Missouri v. Fed-

---

4. 15 U.S.C. § 15b:
 "Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section and sections 15a and 16 of this title shall be revived by said sections."

5. "It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the miti-

gating construction required by that doctrine.
 "We conclude that the decision in the York Case [Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079] is inapplicable to the enforcement of federal equitable rights. The federal doctrine applied in Bailey v. Glover [21 Wall. (U.S.) 342, 22 L.Ed. 636], supra, and in the series of cases following it, governs." Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

6. In *Moviecolor*, which arose before the federal statute of limitations was enacted, the court "borrowed" the New York law to determine the applicable limitation period.

eral Pacific Electric Co., 310 F.2d 271 (8th Cir. 1962), wherein the court carefully reviewed the congressional history of the statute, the cases dealing with fraudulent concealment, and concluded that when the present statute was enacted, Congress was well aware of the federal fraudulent concealment doctrine announced in the *Bailey* case and reaffirmed in more recent cases. In *Kansas City* the court stated:

> " * * * as we shall demonstrate in our consideration of the legislative history of § 4B, Congress had actual knowledge of and affirmatively evinced a purpose of having the principle read into the statute."

To the same effect is the conclusion reached by the 2nd Circuit in Atlantic City Electric Co. v. General Electric Co., 312 F.2d 236 (2nd Cir. 1962), in which the court concluded:

> "The failure to enact bills containing provisions that would have embodied a discovery provision in the words of the statute is hardly the kind of express negative which we think would be necessary to reverse so well established a policy of the law. As we read the Supreme Court's opinion in Holmberg v. Armbrecht, supra, that policy is so

strong that it is applicable unless Congress expressly provides to the contrary in clear and unambiguous language.

 \* \* \* \* \*

"It seems far more likely that when Congress enacted § 4B, it intended that the doctrine of fraudulent concealment continue to apply as it had under Holmberg and its predecessors, than that it be discarded by reference to legislative history."

██ Defendants strenuously urge that this Court's case of United States v. Borin, (5th Cir. 1954) 209 F.2d 145, compels a holding that the statute is not tolled. We disagree. In *Borin* we held that the statute of limitations found in the False Claims Act [7] was not tolled by fraudulent concealment. We based our decision, however, on our view that the emphatic language of the statute, "Every such suit shall be commenced within six years from the commission of the act, and *not afterward*" (emphasis added), clearly demonstrated an intention that fraud or concealment would not toll the statute.[7a] Although *Borin* predates *Atlantic City*, supra, we feel that the statute considered in *Borin* meets the test enunciated in *Atlantic City*. The courts

---

7. 31 U.S.C.A. §§ 231–235.

7a. The fact that the holding in *Borin* was based upon the wording of the statute there involved is supported by statements from the opinion of Judge Sibley in United States v. Lovknit Mfg. Co., 189 F.2d 454 (5th Cir. 1951), and statements by Judge Brown in Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960). One opinion was rendered before *Borin* and one after it. The following is from *Lovknit*:

> "Actions for fraud do not ordinarily accrue till the fraud is discovered or should with diligence have been discovered. And against a cause of action which is *fraudulently concealed* from the plaintiff time does not begin to run during concealment." (Emphasis the Court's.)

The following is from *Hooper*:

> "But this is no unsurmountable obstacle for we agree with Dabney v. Levy, 2 Cir., 1951, 191 F.2d 201, that'

the two-year limitation prescribed in § 11, sub. e does not begin to run until the time the fraud reasonably should have been discovered. That Court applied the teaching of Bailey v. Glover, 1875, 21 Wall. 342, 88 U.S. 342, 22 L. Ed. 636, subsequently applied in Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743, 748, which declared that 'this equitable doctrine is read into every federal statute of limitation.' "

To the same effect is the statement of Judge Learned Hand of the 2nd Circuit in Dabney v. Levy, 191 F.2d 201 (2nd 1951):

> "This we take [Holmberg v. Armbrecht] to mean that in cases of 'fraud', used to include at least instances of the kind at bar, when Congress does not choose expressly to say the contrary, the period of limitations set by it begins to run after the injured party has 'discovered, or has failed in reasonable diligence to discover' the wrong."

of appeals for the 8th,[8] 2nd,[9] 10th,[10] 7th,[11] 9th[12] and D.C.[13] Circuits have ruled that the limitations period of Section 4B is tolled by the fraudulent concealment of the defendants. No court of appeals has ruled to the contrary so far as we can determine. Several district courts have ruled to the contrary, but have been overruled by the several courts of appeals.[14]

We are in complete agreement with the decision reached by the trial court and affirm the judgment on this phase of the case.

## II

We come now to a consideration of Section 5(a), 15 U.S.C. § 16(a) which provides as follows:

"(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

The court below ordered that (1) prima facie effect should not be given to judgments of conviction based on pleas of guilty or pleas of *nolo contendere,* and that the jury would not be charged to the effect that such judgments are to be accorded prima facie effect; (2) references in the complaints to pleas of *nolo contendere* and judgments entered thereon are stricken.[15] Plaintiffs appeal

8. Kansas City, Missouri v. Federal Pacific Electric Co., 310 F.2d 271 (8th Cir. 1962), cert. denied, 373 U.S. 914, 83 S. Ct. 1297, 10 L.Ed.2d 415 (1963).

9. Atlantic City Electric Co. v. General Electric Co., 312 F.2d 236 (2nd Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963).

10. Public Service Co. of New Mexico v. General Electric Co., (10th Cir. 1963) 315 F.2d 306, cert. denied, 373 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033 (1963).

11. Allis-Chalmers Mfg. Co. v. Commonwealth Edison Co., (7th Cir. 1963) 315 F.2d 558.

12. Westinghouse Electric Corp. v. Pacific Gas & Electric Corp., 326 F.2d 575 (9th Cir. 1964).

13. Westinghouse Electric Corp. v. City of Burlington, 326 F.2d 691 (D.C. Cir. 1964).

14. In a succinctly worded per curiam opinion the Court of Appeals for the District of Columbia disposed of the question as follows:

"Per Curiam: The issue urged by appellants has already been litigated unsuccessfully in related suits before the Courts of Appeals for the Second, Seventh, Eighth, and Tenth Circuits. Petitions for *certiorari* were denied three times by the Supreme Court. The matter is under submission in the Fifth and Ninth Circuits. The Third Circuit has denied leave to take an interlocutory appeal. Under the circumstances, we wonder whether the issue can really be said to be still open for adjudication. If it is, we would adopt the reasons stated by Chief Judge Lumbard for the Second Circuit, *en banc,* and affirm the order of the District Court."

15. The court did not grant the motions to strike references to pleas of guilty, but postponed decision thereon until after the court determined admissibility under some theory other than the applicability of Section 5(a). The following is from the court's order:

"The Court is further of the opinion and so finds, that the disposition of defendants' motions to strike references to the Philadelphia Proceedings should be postponed for future decision after the Court has determined the admissibility of evidence supporting the allegations being attacked, under some theory other than the applicability of Section 5a, except that the Court is of the opinion, and so finds, that the allegations in plaintiffs' complaints with respect to pleas of nolo contendere in judgments entered thereon should be

from this order, but contest only the portion holding that judgments on guilty pleas are not to be given prima facie effect. Therefore, the sole question for this Court to determine is whether a judgment of conviction entered upon a plea of guilty is a "consent judgment" within the meaning of the proviso of 5(a). We answer the question in the negative.

We are informed by the parties that while Section 5 has been in the books since 1914,[16] there were no reported cases involving the effect of Section 5 (a) on convictions based on guilty pleas, prior to the 1960 convictions in question. The defendants point out, however, that in Twin Ports Oil Co. v. Pure Oil Co., (D.C.Minn.1939) 26 F.Supp. 366, Judge Nordbye stated that convictions on criminal pleas were within the proviso and were not entitled to prima facie effect. In answer, plaintiffs point out that Judge Nordbye had no such judgments before him and that whatever he said on the subject is mere dictum. In analyzing the case, we find that Judge Nordbye did state that convictions based on guilty pleas are "consent judgments," but he also made the following statement:

> "Before any evidence was introduced, all the defendants who are defendants in this case *withdrew their pleas of not guilty,* which had been entered in the case, and with the consent of the court and upon recommendation of the Government, *entered pleas of nolo contendere.* Fines and court costs were thereupon imposed against each of the defendants, all of which have been paid." (Emphasis added.)

We reject *Twin Ports* as authority for defendants' contentions.

 It is clear to us that while the obvious purpose and function of the proviso of Section 5(a) is to encourage

capitulation by the trusts, thereby saving the government great expense, the primary purpose of the main body of the section is to facilitate and expedite private actions. The Supreme Court recognized such purpose in Emich Motors Corp. v. General Motors Corp., 1951, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 545, wherein it stated:

> "Congressional reports and debates on the proposal which ultimately became § 5 reflect a purpose to minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions. See HR Rep No. 627, 63d Cong 2d Sess 14; S Rep No. 698, 63d Cong 2d Sess 45; 51 Cong Rec 9270, 9490, 13851.
>
> \* \* \* \* \*
>
> "We think that Congress intended to confer, subject only to a defendant's enjoyment of its day in court against a new party, as large an advantage as the estoppel doctrine would afford had the Government brought suit."

It is obvious that the general overall objective of the Sherman and Clayton Acts will be served by construing Section 5(a) in such a manner as to make compatible the differing purposes of the section and its proviso. Judge Kiley of the 7th Circuit so construed the section in Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 323 F.2d 412 (7th Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964), the first reported case involving the question on the appellate level. It was there stated:

> "Both purposes of § 5(a) and its proviso serve the broad objective of antitrust enforcement, and although the two purposes are distinct, '\* \* \* an accommodation must be made to preserve the essence of both.'
>
> \* \* \* \* \*

---

stricken, excepting further that allegations as to the commencement and termination of the criminal actions will be allowed."

16. The original § 5 was very similar to the present § 5, which was amended in 1955.

"If guilty pleas were held to be within the exclusionary proviso, the private litigant, who is injured by the antitrust violation and who is a subject of Congress' concern in enacting § 5(a), would be, by the defendant's plea of guilty, thereby denied the total benefit of that section. Although that result may achieve one purpose of the section in aiding enforcement of the antitrust laws, we think it would help antitrust violators at the direct expense of the victims of those violations. Congress did not intend to confer a benefit in the body of § 5(a), indicating a primary purpose, and, through the proviso, allow its frustration by the unilateral act of an antitrust violator."

The 9th Circuit agreed with the 7th. City of Burbank v. General Electric Co., 329 F.2d 825 (9th Cir. 1964). While a refusal to grant certiorari by the Supreme Court in Commonwealth Edison cannot be construed as approval of the opinion of the 7th Circuit in that case, it is entirely appropriate to refer to that fact as a point of interest in the history of this antitrust litigation.

■ We agree with the conclusions reached by the 7th and 9th Circuits. The exclusionary proviso of Section 5 (a) does not apply to judgments entered on pleas of guilty by defendants in criminal antitrust actions, and judgments entered on such pleas constitute prima facie evidence of the violation of antitrust laws. The judgment of the trial court is reversed insofar as it decides that judgments entered on pleas of guilty are within the exclusionary proviso.

Affirmed in part and in part reversed and remanded.

CONNALLY, District Judge (concurring specially):

I concur fully in the opinion of Judge Gewin wherein it deals with the question of the tolling of the statute of limitations by fraudulent concealment.

With regard to the question of the effect to be afforded a guilty plea under 15 U.S.C.A. § 16(a), were the question one of first impression I should be constrained to dissent. But in the light of the action of the Courts of Appeals for the Seventh and Ninth Circuits cited in the majority opinion (Commonwealth Edison Company v. Allis-Chalmers Mfg. Co., 323 F.2d 412, and City of Burbank v. General Electric Co., 329 F.2d 825) I concur in the result, though I consider this question wrongly decided.

To the abundant treatment this issue has already received, I add only the following brief comments.

The argument that a plea of guilty is not a "consent judgment" in my judgment is completely and conclusively answered by the dissent of Judge Knoch in Commonwealth Edison, supra (at page 417 of 323 F.2d). This, in short, is that a defendant by pleading guilty concedes unqualifiedly that judgment go against him in all particulars. No greater consent could be asked. The Government is hardly in position to deny that it consents when the defendant has conceded its case.

A careful examination of the opinions in Commonwealth Edison and City of Burbank leaves me with the impression that underlying each is the sentiment that a defendant who pleads guilty should not avoid having that fact received in evidence against him in a civil proceeding; he should be punished additionally by civil damages. But that is not the question before us. A guilty plea, or any other admission, well may be admissible under ordinary rules of evidence. The question with which we are concerned is whether a special statutory effect should be given to such a plea. I am unable to see any basis for drawing such a distinction—and with such great consequences—between a plea of guilty and a plea of nolo contendere (which I consider to be little more than a plea of guilty by one with his fingers crossed).

The decision of a trial judge, on arraignment in a criminal case, whether to accept a plea of nolo contendere thus will have the greatest effect upon a civil action, probably as yet unfiled and, of

course, without the plaintiffs therein having an opportunity to be heard. Further, if the trial judge declines to accept the *nolo* plea, what is the advantage to a defendant in pleading guilty? By doing so he subjects himself to the same disadvantage in the anticipated civil litigation as though he fought the Government tooth and nail. A defendant, his *nolo* plea denied, will, I suggest, be inclined to take his chances with the jury and try for an acquittal, a not infrequent result, irrespective of the guilt or innocence of the defendant. The purpose of the statute was to encourage a defendant who in fact was guilty to capitulate to the Government, and thus to avoid the delay and expense of the protracted proceeding. To those who did so by a "consent judgment", and before the taking of testimony, a special bonus was offered. Now this is made available only to those who may persuade the trial judge to accept a *nolo* plea, and thus make a half-hearted capitulation only. It is denied to those defendants who go all the way. I think this was not what the statute intended.

Hamley, Chambers and Barnes, Circuit Judges, dissented.