### UNITED STATES of America

### v.

### BRIGHTON BUILDING & MAINTENANCE CO. et al.

### No. 77 CR 192.

United States District Court,
N. D. Illinois, E. D.

May 6, 1977.

See also, D.C., 431 F.Supp. 1115.

John E. Sarbaugh, John L. Burley, Asst. Chief, Dept. of Justice, Antitrust Div., Samuel J. Skinner, U. S. Atty., Chicago, Ill., for plaintiff.

George D. Crowley, Warren R. Fuller, Crowley & Goschi, Albert E. Jenner, Alan L. Metz, Carol R. Thigpen, Jenner & Block, Barnabus F. Sears, Lawrence M. Gavin, Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., Louis R. Bertani, Herschbach, Tracy, Johnson, Bertani & Wilson, Joliet, Ill., Gary L. Griffin, Dent, Hampton & McNeela, Raymond J. Smith, Irwin I. Zatz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

Before the court is the renewed motion of defendants Thomas J. Bowler and George B. Krug, Sr. to enter pleas of *nolo contendere* in this cause pursuant to a plea agreement between these defendants and the Government. On April 15, 1977, this court declined, without prejudice, to accept tendered pleas of *nolo contendere* from defendants Bowler and Krug and, after consideration of the supplemental pleadings and arguments presented by all parties, this court remains of the opinion that "the interest of the public in the effective administration of justice . . ." will not be served by the acceptance of the tendered pleas of *nolo contendere.* Fed.R.Crim.P. 11(b).

In the April 15, 1977 rejection of the proffered pleas of *nolo contendere* by these defendants, several factors were mentioned as guides to the proper exercise of judicial discretion in accepting or rejecting pleas of *nolo contendere.*

In exercising its discretion . . . the court takes into account any mitigating circumstances, the culpability of the defendant [tendering a *nolo* plea] relative to codefendants, the deterrent effect of a nolo as compared to a guilty plea, the pragmatic considerations of avoiding an expensive and time-consuming trial, and similar factors.

8 J. Moore, Federal Practice § 11.07[3], at 11–110 to 11 (1976). While the Government and defendants urge that these considerations mandate the acceptance of the tendered *nolo contendere* pleas, this court, after an independent balancing of all interests involved in this cause, is compelled to reach the contrary conclusion.

First, the alleged relative culpability of these moving defendants to their codefendants and to others involved in this indictment has not been made clear to this court. Defendants Bowler and Krug maintain that other unindicted individuals involved in the alleged bid-rigging scheme which is the subject of the indictment before this court, and other unindicted persons involved in the alleged bid-rigging schemes in indictments 77 CR 190 and 77 CR 191, are allegedly equally or more culpable than the movants.[1] The Government in their memorandum, however, does not accept or affirm this characterization of the alleged relative culpability of defendants Bowler and Krug. Indeed the Government has stated to the court that in the context of this case the issue of culpability is ". . . not susceptible to presentation." Thus, the court is effectively precluded by the failure of the parties to reach substantial agreement on this issue from assessing the alleged relative culpability of the defendants Bowler and Krug.

Second, this court is of the view that there will be the appearance, if not the actual undermining, of the deterrent effect of the antitrust laws of the United States if the tendered pleas are accepted. While the parties contend that the purpose of these laws will be served since, pursuant to the plea agreements, defendants Bowler and Krug would plead guilty to various antitrust violations in indictments 77 CR 190 and 77 CR 191,[2] it is noted that of these three matters the indictment pending before this court describes the most substantial alleged violation of the antitrust laws, both as to the alleged involvement of and benefit to defendants Bowler and Krug.[3]

---

1. The unindicted individuals are officers of corporations named in this and the aforementioned indictments. Defendants state that these unindicted individuals have been granted immunity from prosecution in these three cases.

2. In indictment 77 CR 190, both defendants would plead guilty to a misdemeanor antitrust violation and defendant Krug would plead guilty to a mail fraud count. In indictment 77 CR 191, defendant Bowler would plead guilty to a felony antitrust charge and to a mail fraud count. In indictment 77 CR 192, the case at bar, defendants Bowler and Krug would plead *nolo contendere* to a felony antitrust charge and the remaining mail fraud counts and racketeering counts would be dismissed.

3. Thus, according to the Government's memorandum, while the defendants Bowler's and Krug's companies submitted bids in 77 CR 190, they were not awarded the final contract. Moreover, in 77 CR 191, where defendant Krug

Additionally and significantly in light of the potential deterrent effect of the antitrust laws which provide for civil actions to recover damages from antitrust violators, the court notes the absence of any indication from the Government as to their position on the possibility of such subsequent proceedings by the United States against the individual defendants Bowler and Krug.[4] Pursuant to 15 U.S.C. § 15, private civil actions are authorized by Congress which allow individuals to obtain treble damages for violations of the antitrust statutes, and in an attempt to further deter potential antitrust violations, 15 U.S.C. § 16 provides that

> (a) A final judgment or decree . . rendered in any . . . civil or criminal proceeding brought by . . . the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said [antitrust] laws . . . .

*Id.* These two provisions working in conjunction create a strong deterrent to potential antitrust violations since once it is established by a plea of guilty or proof beyond a reasonable doubt that a defendant has broken the criminal antitrust laws, the defendant is susceptible not only to penalties attendant a conviction but, in addition, to civil damage judgments.

However, as the Seventh Circuit recognized in *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 323 F.2d 412 (7th Cir. 1963), *cert. denied*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964), a plea of *nolo contendere* by a criminal antitrust defendant does not activate the provisions of section 16 and does not give private litigants the distinct advantage of having their cases established by the Government, an entity uniquely capable of litigating complex antitrust cases. *See also Lindy Bros. Builders v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973). This legal effect of a *nolo contendere* plea, coupled with the Government's silence on the question of any possible civil antitrust action brought by the United States against defendants Bowler and Krug, could substantially lessen the prospect of effectuating the potential deterrent effect of the civil treble damage provisions of 15 U.S.C. §§ 15, 16.[5]

The court's review of this aspect of the deterrence issue should not in any respect suggest that a "vindication" of the public interest can and must only be achieved by such civil suits. In declining to accept these *nolo contendere* pleas this court is not and should not be concerned with either exposing or insulating defendants Bowler and Krug from the prospect of subsequent civil actions in the event of possible convictions. Rather the court concludes that the acceptance of the *nolo contendere* pleas in a case of this potential magnitude where the Government has not stated its intentions with regard to further civil actions presents a situation not conducive to implementing the deterrent effect of the antitrust laws.

Third, this court is not convinced that there are sufficient mitigating circumstances or considerations of judicial economy which would move this court to accept de-

---

was not indicted, the companies controlled by defendant Bowler did not submit bids at all. In this case, however, defendants Bowler's and Krug's companies did submit bids that were actually accepted. Finally, the Government's brief indicates that while the combined value of the construction contracts for which allegedly rigged bids were submitted in cases 77 CR 190 and 77 CR 191 totalled approximately $6,500,-000, in the case at bar the contracts were valued at over $45,000,000, with the defendants' companies receiving nearly two-thirds of the contracts awarded.

4. It should be noted that mention is made in the Government's brief of the possibility of civil actions against the defendants' corporations if they are convicted in the present cause.

5. The court also observes in connection with any possible deterrent effect that under the terms of the plea agreements entered into between the Government and defendants the Government has agreed not to commence any civil actions against defendants Bowler and Krug pursuant to 18 U.S.C. § 1964, the "anti-racketeering" statute.

fendants Bowler's and Krug's pleas of *nolo contendere*. In mitigation, defendants suggest that the allegations in the indictment before the court can be characterized as a "local" conspiracy to violate the antitrust laws which was relatively short in duration. However, this court is cognizant of both the significance of the Chicago metropolitan area as a commercial center and the charges of the pending indictment and declines to accept such a characterization. Further, this description of the alleged conspiracy has not been adopted by the Government. Indeed, the defendants themselves characterize the companies controlled by them as "major powers in the road building industry, in Northern Illinois . . ." and the Government labels these corporations as "large highway contractors." As to considerations of judicial economy, even if the pleas were found acceptable by the court there presently remains the prospect of a lengthy trial involving the corporate codefendants in this case.

Finally, certain other factors have been presented by the Government and the defendants which they contend support the request that this court accept the pleas of *nolo contendere*. In their memorandum, defendants point to certain statistics which indicate that in the overwhelming majority of antitrust cases where *nolo contendere* pleas were offered, they were accepted. Thus, defendants argue that this court was incorrect in stating on April 15, 1977 that pleas of *nolo contendere* "are generally looked upon with disfavor and should be accepted by the court only in the most exceptional circumstances." This court's remarks on April 15, 1977 were directed to the entire range of federal criminal statutes as emphasized in open court on April 26, 1977 and, therefore, the statistics presented by defendants do not alter that conclusion.

■ Although the statistics offered by the defendants appear to indicate that in the past in criminal antitrust cases pleas of *nolo contendere* have been accepted by some courts quite readily, this court neither subscribes to nor wishes to promote such a trend if indeed it exists. Routine acceptance of pleas of *nolo contendere* runs counter to the mandate of rule 11 which requires court approval of *nolo contendere* pleas before they are entered. Moreover, to allow such pleas generally in antitrust litigation, a traditional white collar crime, while at the same time rejecting them in other types of criminal cases, casts a shadow over the even-handedness of the administration of justice. Therefore, to the extent it is suggested in the defendants' brief, this court declines to pursue or accept a special *nolo contendere* standard for antitrust violations as compared to other federal criminal offenses.

■ Additionally, this court has given significant consideration to the Government's recently modified position[6] in this case of "urging" the acceptance of the pleas of *nolo contendere* tendered by defendants Bowler and Krug. While the court recognizes that the Antitrust Division of the United States Department of Justice is given the weighty task of enforcing the antitrust laws of this country, the Congress in adopting Fed.R.Crim.P. 11(b) has directed to the court the responsibility of determining whether the public interest will be served by the taking of a plea of *nolo contendere*. Thus, though antitrust prosecutors may properly have their own good-faith beliefs as to enforcement policy in a specific case and such views are entitled to meaningful consideration, it is the court's obligation to carefully weigh such conclusions and to not routinely follow them without independent analysis when pleas of *nolo contendere* are offered. In this case the court has been unable to find the Government's recommendation compelling upon a review of all the circumstances presented supporting the instant motion.

Therefore, for the foregoing reasons, this court must reject the tendered pleas of *nolo contendere* by defendants Bowler and Krug. In doing so, this court notes that it is guided by the principle that one should

---

6. At the outset of these proceedings and pursuant to the plea agreement the Government's stance as to these pleas of *nolo contendere* was one of "no objection."

not confuse efficient judicial administration with the administration of justice. Hence the court is convinced that the public interest would be ill-served by allowing these defendants to plead *nolo contendere*. The motion of defendants Bowler and Krug is accordingly, DENIED.

It is so ordered.